LEMMON, Judge.
As Homer Times, a pedestrian, crossed South Claiborne Avenue at its intersection with Washington Avenue in the City of New Orleans, he was struck by a Volkswagen automobile driven by the minor, Victor Paul Wickman. After a trial on the merits of Times’ damage suit against Wick-man’s father and his insurer, the trial judge rendered a judgment in favor of Times in the amount of $13,100.00. The defendants have appealed both as to liability and quantum.
At the point of the accident South Claiborne Avenue is a major north-south thoroughfare, comprised of three traffic lanes and one parking lane on each side of a raised neutral ground. Washington Avenue consists of two undivided lanes, one for eastbound traffic and one for westbound traffic. An electric semaphore signal controls the flow of traffic.
At each corner of the intersection are commercial establishments, including a neighborhood supermarket which remained *115 open until 10:00 P.M. Crosswalks were marked for pedestrian traffic, which was generally heavy in the area.
The accident occurred on December 5, 1967 shortly after 10:00 P.M. Times had crossed Washington Avenue from the corner where the supermarket is located. At the southwest corner of the intersection he observed that the light was red for Claiborne Avenue traffic, and he proceeded to cross the three northbound lanes of that boulevard. Upon reaching the neutral ground, he noted that the light was still red for Claiborne Avenue traffic and that several cars were stopped for the signal. He walked in front of a stopped car in the lane nearest the neutral ground, but was struck by the Volkswagen as he crossed the middle lane.
Wickman testified that ,as he left the traffic light one block before the accident, he noticed the Washington Avenue light was red. He decreased his speed from 20 miles per hour to 10 to 15 miles per hour. As he approached the intersection, he noted from a side view of the signal that the yellow light had flashed for Washington Avenue traffic and was thus aware that a favorable light was about to appear for him. He again accelerated, and the light turned green in his favor when he was 15 to 20 feet from the intersection. He proceeded between cars stopped in the lanes on either side of him and struck Times, whom he did not see until the impact. He admitted that he saw five to ten other pedestrians, but testified that the last one had crossed when he was about 20 feet from the crosswalk. He stated that the area was well lighted but that Times was wearing dark clothing.
Three eye witnesses and the investigating officer also testified. Clarence Vernon, headed west on Washington Avenue, was stopped for a red light, but when the light changed to green, he did not proceed because the Volkswagen was approaching at a fast speed. He saw the Volkswagen pass between two cars which had stopped for the signal and strike Times, who was walking in the crosswalk.
Richard Borja was stopped for the signal on Claiborne in the lane nearest the sidewalk. He testified that the light turned yellow when Times (wearing a light colored shirt) was at the edge of the neutral ground and that Times was “almost running” when he was struck. However, he also testified that the light was yellow for Claiborne when he first observed the Volkswagen, and he was obviously confused about the light sequence, since the signal does not turn from red to yellow, but directly to green.
Edwin Bultman was traveling behind Wickman in the same lane. He had not been stopped by the traffic light at the previous corner and watched the Washington Avenue signal so as to gauge his speed correctly, but caught up when Wickman slowed. He testified that the light changed to green when Wickman was about 5 feet from the intersection.
The testimony of the investigating officer, who only stated the versions of the accident related by the parties, was inconclusive.
The trial judge reconciled the conflicts in the testimony with the following analysis:
“Although Mr. Wickman denied that he ‘played’ the light, the facts and circumstances of the accident indicate that he did just that. The light facing him was red but Mr. Wickman anticipated when the light would swich [sic] to green, and did not appreciably slow his car as he approached Washington Avenue even though he saw pedestrians crossing in his path.
******
“As aforesaid, Mr. Wickman was ‘playing’ the light. As he approached Washington Avenue, he said he did see the yellow light facing cars on Washington Avenue, meaning that he was look *116 ing for the yellow light and not for pedestrians. Mr. Wickman described the impact as ‘fairly heavy’.
“As earlier stated, the light facing Mr. Wickman was red when Mr. Times stepped off the neutral ground. Then the light facing Mr. Times turned yellow, then red. By stepping from the curb to cross on a favorable light, Mr. Times was lawfully in the intersection and legally entitled to complete his crossing safely, notwithstanding a change of signal during his crossing maneuver.
“If Mr. Wickman had been maintaining a proper lookout, he would have seen Mr. Times, who is six feet, two inches tall. This negligence, in the Court’s opinion, was the sole cause of the accident.” (Emphasis supplied)
As to Wickman’s negligence, we find that the record reveals sufficient evidence upon which the trial judge could base his findings of fact, and we agree with his conclusion of law that Wickman’s failure to maintain a proper lookout was a substantial factor in causing the accident.
As to Times’ negligence, the key factual determination was the color of the light at the moment that Times stepped into the crosswalk. Had the light facing Times already turned to yellow, Times would have been required to stop.[1] The burden was on the defendant to prove that the light was yellow when Times entered the crosswalk, and we find that the record is devoid of such evidence. We therefore affirm the conclusion of the trial court that Times was not negligent.
Times sustained fractures of the pelvis on the left and right and of the acetablum. After being hospitalized for 23 days, he was allowed to be ambulatory with the use of crutches, which he used for about three months. He returned to work as a porter in a department store on March 4, 1968. An orthopedic evaluation one '-year after the accident indicated that he had lost approximately 20% of the normal function of his right hip. At the time of trial, 18 months after the accident, he was still receiving treatment at Charity Hospital and still occasionally using a cane for walking. The Charity Hospital bill of $1,085.85 included a $525.00 surgical fee. Private orthopedic examination and x-rays cost $100.00.
Times earned $56.00 per week and missed approximately 12 weeks of work. He also claims that he missed additional time after he returned, but there is no evidence that this lost time was caused by the accident.
The trial court awarded $100.00 for medical expenses, $500.00 for loss of wages, and $12,500.00 for pain, suffering and residual disability. The record substantiates the award for special damages, and we find no abuse of discretion in the $12,500.00 award.
However, by answer to the appeal Times contends that the trial court erred in excluding the Charity Hospital bill from the judgment on the basis that plaintiff was not responsible for that bill.
There is authority for the proposition that a plaintiff who actually proves that he received the services rendered and a bill for such services is entitled to receive a judgment for the amount of the bill. See Jordan v. Travelers Ins. Co., 231 So.2d 678 (La.App. 1 Cir. 1970), writ refused, 256 La. 65, 235 So.2d 95 (1970).
However, R.S. 46:11 and 11.1 permit Charity Hospital to institute proceedings or to intervene in a personal injury or a workmen’s compensation suit at any time prior to judgment in order to recover costs of hospitalization and medical services rendered. R.S. 46:9 requires a copy of a petition *117 for damages or for compensation, where the petitioner has received treatment for the subject injuries in Charity Hospital, to be served on the hospital, and further prohibits any court from proceeding with the trial of the suit unless a copy of the peti-ción has been served.
The purpose of the statute is to insure payment to Charity Hospital rather than to benefit either the patient or the tort feasor. Service on the hospital was not had in this case. We therefore remand that portion of the case involving the Charity Hospital bill and order that Charity Hospital be served with a copy of the petition. In all other respects, the judgment is affirmed.
Affirmed in part, remanded in part.

. R.S. 32:232(2) (b) provides:
“(2) Steady YELLOW or AMBER alone: * * * sj: sj< * #
“(b) Pedestrians facing such signal are thereby advised that there is insufficient time to cross the roadway, and any pedestrian starting to cross shall yield the right of way to all vehicles.”