308 So.2d 348 (1975)
Daniel FOXWORTH
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 6643.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1975.
Rehearing Denied March 12, 1975.
*349 Ben C. Toledano, E. Ross Buckley, Jr., Porteous, Toledano, Hainkel & Johnson, New Orleans, for State Farm Mut. Auto. Ins. Co. and Harold G. Kelt, Jr. d/b/a Kelt Ice Co., defendants-appellants.
Robert M. Caswell, Kronlage, Dittman & Caswell, New Orleans, for Daniel Foxworth, plaintiff-appellee.
Before BOUTALL, SCHOTT and MORIAL, JJ.
BOUTALL, Judge.
This case arises out of an injury suffered by the plaintiff while seated in the driveway of the Kelt Ice Company, owned by Harold G. Kelt, Jr. The driveway is a narrow driveway bordered by the H & K Oyster House and a house fronting N. Claiborne Avenue. At the rear of the driveway is the Kelt Ice House.
Plaintiff was a 65 year old ex-prize-fighter who had a habit of drinking a little too much. During the course of the evening Kelt had seen plaintiff in the driveway on two occasions holding a bottle of wine and ordered him to leave. Foxworth complied both times. About 10 P.M. Kelt, either anticipating or being told that his ice truck had come back from deliveries, walked down the driveway to move his pickup truck which was blocking it. Thereupon Kelt encountered Foxworth for a third time that evening. This time, according to Kelt, he pushed Foxworth out of the driveway. However, according to a plaintiff witness, Foxworth was unconscious and crouched near an iron post in the right-hand corner of the driveway near the sidewalk. He says Kelt told two of his employees, helpers on the ice truck, to move the plaintiff. In either event, Kelt then got into his pickup and drove it around the corner to park it.
Exactly what transpired during Kelt's absence is in much dispute however, the version as told by the two eyewitnesses that were standing in front of the Oyster House must have been the version that the jury considered the most credible. These witnesses testified that after Kelt had left the driveway two of the helpers went up and touched plaintiff telling him to get out of the area. Foxworth neither roused himself nor was he forcefully moved by the two helpers. Following their attempts to move Foxworth they indicated to the driver of the truck that it would *350 be alright to enter the driveway, apparently on the theory that either Foxworth would rouse himself when the truck neared or that the driver, unaware of what had just transpired, would still have enough room to enter the driveway without striking Foxworth. The driver in entering the driveway ran over plaintiff's left leg.
Mr. Foxworth sustained a severely broken leg, necessitating an operation to place pins and a steel plate in his shattered leg. The truck left a large, gaping wound that required a skin graft and Mr. Foxworth was confined to a long leg cast for seven months. Since the cast has been removed Dr. Ruel testified that Foxworth would walk with a limp for the rest of his life and that he considered the limp disabling. Dr. Ruel also testified that plaintiff's healing process had caused a bone chip to dislodge from his bone and that this chip had caused a small hole on Foxworth's leg through which fluids drain. The doctor was unable to say how long this draining process would continue.
There can be little doubt that both plaintiff and defendant have acted negligently in causing this accident. The question then becomes, can plaintiff still recover on the basis of last clear chance or is he estopped from recovery due to his contributory negligence? The doctrine of last clear chance applies only in certain instances and these are: 1) When the plaintiff is in a position of peril and he is unaware of the peril or unable to extricate himself from that position. 2) The defendant actually discovers plaintiff's peril or should have discovered the plaintiff's peril. 3) At the time that the defendant discovered or should have discovered plaintiff's peril, defendant had a reasonable opportunity to avoid the accident. Epperly v. Kerrigan, 275 So.2d 884 (La.App. 4th Cir. 1973).
Foxworth was undoubtedly in a position of peril. The physical evidence shows that when the ice truck is in the driveway or turning into the driveway there is very little clearance for the wheels on either side of the driveway. It is possible that Foxworth was unaware of this danger, but it is certain from all the evidence presented that he was in a drunken, unconscious state and thus unable to extricate himself from the driveway.
The evidence is also sufficient to support a finding that the defendant's employees discovered plaintiff and failed to act reasonably after that discovery, since they waved the truck into the narrow driveway with the knowledge that plaintiff was there. We feel that the doctrine of last clear chance plainly applies and that it was defendant who had the last clear chance and therefore should repair plaintiff's loss.
In reviewing this case we are reminded of the recent Supreme Court case of Canter v. Koehring, 283 So.2d 716 (1973), wherein they said, "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error."
Defendant alternatively argues for the first time on this appeal that this was an intentional tort by his employees and therefore he is not liable under the doctrine of respondeat superior. No such defense was made and presented to the jury. In any event, we fail to see any evidence in the record of willfulness or intention. We feel that defendant's employees were grossly negligent, but we cannot believe they intentionally caused an ice truck to run over an unconscious man's leg.
The jury, in answer to interrogatories given them by the judge, granted the following awards to plaintiff: $1,987.95 for medical and hospital expenses to date of trial, $1,000 for future medical and hospital expenses and $12,000 for pain and suffering, past and future both physical and mental. Defendant disagrees only with the award of $1,987.95 for medical and hospital expenses. Defendant contends and we agree that plaintiff has violated LSA-R.S. 46:9, which provides:
"§ 9. Copy of petition to be served on hospital when patients sue for injuries
*351 "Any person who has received in any of the charity hospitals of the state or in a veterans administration hospital in the state treatment for injuries which might entitle him to damages or compensation, and who files suit for the recovery of the damages or compensation, shall cause a copy of the petition to be served on the hospital from which he received treatment, or on the attorney designated to represent the hospital, at least ten days before the trial of the suit.
"No court of this state shall proceed with the trial of any suit involving any claim referred to in this Section, unless a copy of the petition has been served as required."
In the case at bar there was no service on Charity Hospital of New Orleans of a copy of the petition, and despite the prohibition contained in the second paragraph that no court shall proceed with the trial of any suit, the trial did proceed and judgment was rendered in favor of plaintiff. The obvious legislative intent is to stop the proceedings until such time as the hospital is notified in order to afford it an opportunity to assert its rights. We note however that the statute does not itself contain any penalty for proceeding when its provisions are violated. There is some jurisprudence in this state to the effect that a person who has received treatment from a Charity Hospital may sue for those expenses and recover judgment despite this prohibition of Section 9. See Jordan v. Travelers Insurance Company, 231 So.2d 678 (La.App. 1st Cir. 1970); Ledbetter v. Hammond Milk Corporation, 126 So.2d 658 (La.App. 1st Cir. 1961). In each of these cases it seems that the prohibition was simply ignored.
We believe the statute should not be ignored but should be given effect. However the precise question before us is what penalty should be imposed when the statute is not complied with. In the recent case of Times v. Wickman, 261 So.2d 113 (La. App. 4th Cir. 1972) we said:
"[4, 5] The payment of the statute is to insure payment to Charity Hospital rather than to benefit either the patient or the tort feasor. Service on the hospital was not had in this case. We therefore remand that portion of the case involving the Charity Hospital bill and order that Charity Hospital be served with a copy of the petition. In all other respects, the judgment is affirmed "
It appears to us that it would be too harsh a remedy to set aside the entire judgment and remand the entire matter back to the District Court for service of the petition and another trial. We note that since the enactment of R.S. 46:9 two other statutes have been enacted which we feel provided ample protection to the Charity Hospitals of this state. We refer to LSA-R.S. 46:11.1[1] and LSA-R.S. 9:4751-4755, specifically § 4752.[2] In view of these statutes *352 and the existing jurisprudence, we feel that the rights of Charity Hospital will be amply protected by setting aside that portion pertaining to the medical treatment afforded by the Charity Hospital of New Orleans in remanding that issue only, ordering plaintiff to serve Charity Hospital with a copy of the petition in order to afford it a chance to assert its rights under the statutes above referred to.
For the foregoing reasons the judgment of the trial court is affirmed, except for the award of $1,987.95 for medical and hospital expenses, which we set aside and remand to the trial court for the purpose of requiring service of a copy of plaintiff's petition upon Charity Hospital of New Orleans, and further proceedings in connection therewith. The costs of this appeal are to be paid by defendants-appellants.
Affirmed in part, annulled and remanded in part.
NOTES
[1] "§ 11.1 Intervention in personal injury and workmen's compensation suits

"A. The Charity Hospital of Louisiana in New Orleans, Confederate Memorial Medical Center in Shreveport, or the State Hospital Board, on behalf of any of the general charity hospitals under the administration of said board, or any veterans administration hospital in the state, may intervene at any time prior to judgment in any personal injury suit or in any suit involving workmen's compensation claims in which any of these hospitals has an interest, for the purpose of recovering the cost of drugs, X-rays, laboratory fees, surgical, medical and other expenses of hospitalization and services rendered.
"B. It is the intention of this section that prescription shall not run against the intervention by any of said hospitals or the State Hospital Board or a veterans administration hospital in the state in any such suit in which any of them may have an interest until judgment has been rendered in the cause in the court of original jurisdiction or the prescriptive period provided by law for the cause of action has run, whichever is the later. Acts 1958, No. 465, §§ 1, 2. Amended by Acts 1972. No. 20, § 1."
[2] "§ 4752. Privilege on net proceeds collectted from third party in favor of hospitals for services and supplies furnished injured persons.

"A hospital that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges of fees of such hospital on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery of sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person. Provided, however, the privilege of an attorney shall have precedence over the privilege created under this section. Acts 1970, No. 409, § 2."