603 So.2d 765 (1992)
Rebecca THOMAS, Plaintiff-Appellant,
v.
CHAMPION INSURANCE COMPANY, et al., Defendants-Appellees.
No. 91-132.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
*766 Joseph Kutch, Pineville, for defendant in reconvention/appellant.
George Celles, IV, Natchitoches, for Thomas, appellee.
H. Russell Davis, Arcadia, for intervenor/appellee.
Craig O. Marcotte, Natchitoches, for Champion, appellee.
Before DOMENGEAUX, C.J., and DOUCET and PATIN[*], JJ.
PATIN, Judge Pro Tem.
Rebecca Thomas filed suit for damages resulting from an auto collision, against David Wallace and his insurer, Champion Insurance Co. Louisiana Insurance Guaranty Association was substituted for Champion, following the financial failure of the latter, and effected a settlement with Thomas. Ramona Feazell, a passenger in the Wallace vehicle, a 1981 Honda, intervened in the suit. Wallace filed a reconventional demand against Thomas and her insurer, Certified Lloyds.
Finding that the sole and proximate cause of the accident was the negligence of Thomas, the trial court awarded Wallace $7,267, including $2,700 for loss of use of his vehicle and rental of a replacement auto. Feazell was awarded $8,659.82 including $519 for treatment which she received at L.S.U. Medical Center, Shreveport.
Thomas and her insurer, Certified Lloyds (hereinafter Thomas), appeal, assigning three errors in the trial court's judgment. Firstly, Thomas alleges that the trial court erred in finding that she was the sole cause of the accident. Secondly, Thomas alleges that the trial court erred in awarding Wallace car rental costs for over a year. Thirdly, Thomas alleges that the trial court erred in awarding Feazell medical expenses for the treatment which she received at L.S.U. Medical Center, Shreveport.
On March 11, 1989, during the early evening, Thomas and Wallace were proceeding north on Louisiana Highway 9, at its intersection with Sullivan Road. Thomas was ahead of Wallace. The accident scene was a no passing zone indicated by a double yellow line in the middle of the highway. An accident occurred when Thomas attempted to make a left turn into Sullivan Road. The location of the Thomas vehicle immediately prior to the accident was contested at trial. Thomas claimed that she was in the Northbound lane of Highway 9 attempting to turn left onto Sullivan Road, when the Wallace vehicle attempted to pass her. However, Wallace and Feazell claimed that the Thomas vehicle was on the shoulder of Highway 9 until they attempted to drive by, at which time the Thomas vehicle suddenly turned left into them. State Trooper Townsend testified that the point of impact was in the intersection of Sullivan Road, approximately one foot from the white "fog line" on the western edge of Highway 9. The Wallace vehicle was heavily damaged. After the collision, the vehicle flipped onto its roof and slid into either a light or telephone pole. Feazell received some treatment for her injuries at the L.S.U. Medical Center, Shreveport.
*767 Thomas' first assignment of error alleges that the trial judge erred in finding her to be the sole cause of the accident.
It is well settled that a court of appeal may not set aside a trial court's or a jury's findings of fact in the absence of `manifest error' or unless it is `clearly wrong' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
Rosell v. Esco, 549 So.2d 840, 844-845 (La.1989). (Citations omitted).
With this in mind, we determine whether the record reviewed in its entirety discloses that the trial court committed manifest error in holding that "the sole and proximate cause of (the) accident was the negligence of Rebecca Thomas ...".
La.R.S. 32:104 statutorily sets forth the duties imposed by law on a left turning driver:
A. No person shall turn a vehicle at an intersection ... or otherwise turn a vehicle from a direct course or move ... left upon a roadway unless and until such movement can be made with reasonable safety.
B. Whenever a person intends to make a ... left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal....
Further, as stated in Bamburg v. Nelson, 313 So.2d 872, 874 (La.App. 2d Cir. 1975):
The duty of the left-turning motorist is two-fold, the first being to give a proper signal, and secondly to make proper observation that the turn can be made without endangering an oncoming or overtaking vehicle. See Lewis v. Liberty Mutual Insurance Company, 215 So.2d 138 (La.App. 3rd Cir.1968). A left turner must not only give an adequate signal of his intention but also make adequate observation to his rear to ascertain that the turn can be safely made. Ardoin v. Chachere, 207 So. 2d 574 (La.App. 3rd Cir.1968).
Additionally, it is well settled law, and we have previously stated that:
A left turn is generally a dangerous maneuver which must not be undertaken until the turning motorist ascertains that the turn can be made in safety. Agency Rent-A-Car, Inc. v. Hamm, 401 So. 2d 1259 (La.App. 1st Cir.1981). A left-turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show that he is free of negligence. Bennett v. United States Fidelity & Guaranty Company, 373 So. 2d 1362 (La.App. 1st Cir.1979), writ denied, 376 So. 2d 1269 (La.1979). Also, Williams v. Inabnett, 345 So. 2d 1294 (La. App. 3rd Cir.1977).

Attales v. Shelter Mutual Ins. Co., 488 So. 2d 474, 476 (La.App. 3d Cir.1986).
At trial, Thomas testified that on the evening of the accident, as she was driving Northward on Highway 9, she had difficulty locating Sullivan Road. Thomas had never previously driven herself to Sullivan Road. There were neither street lights nor signs on Highway 9 around Sullivan Road. Thomas had purchased the vehicle she was driving less than two months earlier. Although Thomas testified that she turned on her blinker to signal a left turn, she also testified that she did this "maybe five feet" before she started making her turn.
State Trooper Townsend, who investigated the accident scene, shortly after the accident, testified that Thomas told him that she was looking for Sullivan Road, "had almost missed it, [and] hit her brakes and her signal at the same time, and was attempting to turn when she was hit."
*768 Wallace and Feazell had a different account of the events of the evening of the accident.
Wallace testified that as he "topped a little hill ... Mrs. Thomas' car was on the shoulder of the road," and as he passed her vehicle "she wheeled out in front of [his vehicle]". Wallace testified that he went to the other side of the road (the Southbound lane where the point of impact occurred) in an unsuccessful attempt to avoid collision with the Thomas vehicle.
Feazell's testimony at trial corroborated Wallace's. Feazell testified that:
We were going down the road headed home and there was a car sitting on the side of the road, or the side of the road to the right. And when we started to proceed by she just whipped out in front of us ... And David proceeded to go to the other side of the road to try to miss her and she just followed us and hit us anyway.
The trial court, after evaluating the credibility of the parties and witnesses before it held that:
... the sole and proximate cause of this accident was the negligence of Rebecca Thomas in making an improper left turn; in failing to see the overtaking Wallace vehicle; and in failing to make a left turn signal continuously during not less than the last 100 feet traveled by her before turning.
We find no manifest error in the trial court's judgment.
At trial, over the objections of Thomas, the trial court allowed Wallace to introduce into evidence fifty-five receipts (although Wallace testified that there were fifty-four), each allegedly evidencing payment by Wallace of fifty-dollars per week to his father for the rental of a 1976 Buick Regal. Wallace alleged, and the trial court agreed, that Thomas should be held liable to him for the $2,700 represented by the fifty-four receipts. In her second assignment of error, Thomas assigns error to the trial court's award to Wallace of $2,700 for "[l]oss of use of automobilerental of replacement vehicle."
While damages for the rental of a vehicle are indeed recoverable under Louisiana tort law, those damages are not unlimited. As we stated in Washington v. Lake City Beverage, Inc., 352 So.2d 717, 722 (La.App. 3d Cir.1977), writ denied 354 So.2d 1050 (La.1978):
In those cases in which the wrecked vehicle is totally destroyed or its repair is not economically feasible, those damages are recoverable only for a reasonable time, that period in which the owner becomes aware of the situation and secures a replacement therefor.
Also see our opinions in Menard v. Prejean, 374 So.2d 1275 (La.App. 3d Cir.1979), and Meshell v. Insurance Co. of North America, 416 So.2d 1383 (La.App. 3d Cir. 1982).
In this case the record clearly establishes that the Wallace vehicle, as a result of being struck by the Thomas vehicle, flipped onto its roof and slid into either a light or telephone pole, was either "totally destroyed", or at a minimum was damaged so that its repair would not have been "economically feasible".
Both Wallace and Feazell testified that the vehicle in which they were riding, the Wallace vehicle, flipped onto its roof and slid into either a light or telephone pole.
Trooper Townsend, in his report of the accident scene, described the damage to the Wallace vehicle as "heavy damage to the right front, right side, and right rear."
Jimmy Marcelli, a mechanic and repair and wrecker service operator since 1954, and the person who towed away the remains of the Wallace vehicle testified that the vehicle was "a complete total", that "looked like a beer can that you had stepped on". When Marcelli was asked if the vehicle would cost more to repair than it was worth, his response was, "oh, I'm sure. Unrepairable".
Therefore, Wallace was only legally entitled to rental damages for a "reasonable time". In Menard, supra, we held that 30 days was a "reasonable period of time" to replace the tractor at issue therein. In Meshell, supra, we held that a trial *769 court's holding that 60 days was a reasonable time to replace the gravel truck at issue therein, was not an abuse of discretion, "[c]onsidering the nature and cost of the property sought to be replaced". Given the damage to the Wallace vehicle, and considering that the Wallace vehicle was a 1981 Honda, the trial court committed manifest error and abused its discretion in awarding Wallace rental damages for fifty-four weeks or 378 days. We therefore reverse the trial court's award to Wallace of $2,700 for "[l]oss of use of automobile rental of replacement vehicle", and reduce the said award to $400, believing that given the facts of the case, two months, at most, was a "reasonable time".
In her third assignment of error Thomas questions the trial court's award to Feazell of $519 for the treatment Feazell received at L.S.U. Medical Center, Shreveport.
La. R.S. 46:9 provides:
A. Any person who has received in any of the charity hospitals of the state or in a veterans administration hospital in the state treatment for injuries which might entitle him to damages or compensation, and who files suit for the recovery of the damages or compensation, shall cause a copy of the petition to be served on the hospital from which he received treatment, or on the attorney designed to represent the hospital, at least ten days before the trial of the suit.
B. No court of this state shall proceed with the trial of any suit involving any claim referred to in this Section, unless a copy of the petition has been served as required, or such service has been waived as provided in Subsection C [which is not applicable under the facts herein] ...
The record establishes that Feazell sought and received treatment at L.S.U. Medical Center, Shreveport, because the orthopedic doctors whom she first contacted required a one hundred and fifty dollar deposit, which she was unable to pay.
La.R.S. 46:6 provides:
A. Any bona fide resident of the State of Louisiana who is medically indigent or medically needy shall be eligible to be admitted for any form of treatment by any general hospital owned and operated by the State of Louisiana ...
Upon the authority of the above statute, Feazell could not have been, and indeed was not, refused treatment at L.S.U. Medical Center, Shreveport, because of her indigency.
It is uncontested by the parties that L.S.U. Medical Center, Shreveport, is a charity hospital within the meaning of the above statutes. It is also uncontested by the parties that the trial court's award of $519 to Feazell was for the treatment which she received at L.S.U. Medical Center, Shreveport. In fact, Feazell does not even deny that by failing to serve L.S.U. Medical Center, Shreveport, with a copy of her demand in intervention, as provided in La.R.S. 46:9, her $519 award is inconsistent with the clear language of La.R.S. 46:9. Rather, Feazell urges us to affirm her $519 award because L.S.U. Medical Center, Shreveport is subrogated to her rights under La.R.S. 46:8 (1982).
This argument has been before us before, and we dismiss it now for the same reasons we dismissed it then. In Bernstine v. City of Natchitoches, 335 So.2d 51 (La.App. 3d Cir.1976) we held that:
The purpose of the statute is to insure payment to Charity Hospital rather than to benefit either the patient or the tort feasor.
Bernstine, supra at 55, citing Times v. Wickman, 261 So. 2d 113, 117 (La.App. 4th Cir.1972).
Furthermore, under the facts of Bernstine, supra, we stated:
Since Confederate Memorial Hospital was not served with plaintiff's petition as required by LSA-R.S. 46:9 we conclude that this matter should be remanded to the district court insofar as the medical bill of $455.00 is concerned in order that the hospital be served with a copy of the petition to the end that the latter may intervene and assert such rights as it may have under the provisions of the cited statutes. We are not unmindful of the several cases holding to the effect that a person who has received treatment from a Charity Hospital may sue for *770 those expenses and recover judgment despite the prohibition of LSA-R.S. 46:9, Jordan v. Travelers Insurance Company, 231 So. 2d 678 (La.App. 1st Cir.1970); Ledbetter v. Hammond Milk Corporation, 126 So. 2d 658 (La.App. 1st Cir. 1961); and Leonard v. Travelers Insurance Company, 183 So. 2d 447 (La. App. 2nd Cir.1966). We conclude, however, as did our brethren of the 4th Circuit in Times v. Wickman, supra, and Foxworth v. State Farm Mutual Automobile Insurance Company, et al., 308 So. 2d 348 (La.App. 4th Cir.1975) that the statute should not be ignored but should be given effect.
In the case before us we hold that since L.S.U. Medical Center was not served with a copy of Feazell's petition as required by La.R.S. 46:9, this case, insofar as the $519 award to Feazell is concerned, must be remanded to district court to allow L.S.U. Medical Center to be served with a copy of Feazell's petition, and to intervene and assert its rights.
For the foregoing reasons, that part of the judgment of the trial court holding that the "sole and proximate cause of [the] accident was the negligence of [Thomas] ..." is affirmed. However that part of the judgment of the trial court awarding Wallace $2,700 for "[l]oss of use of automobilerental of replacement vehicle" is reversed, and is hereby reduced to $400. Furthermore, that part of the judgment of the trial court awarding Feazell $519 for the treatment which she received at L.S.U. Medical Center, Shreveport is reversed and the matter is remanded to allow L.S.U. Medical Center, Shreveport to be served with a copy of Feazell's petition, and to intervene, and for further proceedings consistent with law.
The costs of this appeal are hereby assessed 50% to Thomas, 25% to Wallace, and 25% to Feazell.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART, REVERSED AND REMANDED IN PART.
NOTES
[*] Judge John A. Patin, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.