# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-719


ANANIAS JOHNSON, ET AL.

VERSUS

ROBERT L. JOHNSON, JR., ET AL.


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 107,769, DIV. F
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JIMMIE C. PETERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

Cooks, J., dissents and assigns written reasons.


**AFFIRMED.**

**Kenneth W. DeJean**
**Attorney at Law**
**P. O. Box 4325**
**Lafayette, LA 70502**
**(337) 235-5294**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Ananias Johnson**
    **Theresa Johnson**

**Rodney James Lacoste, Jr.**
**Perrier & Lacoste, LLC**
**One Canal Place, Suite 2550**
**New Orleans, LA 70130**
**(504) 212-8820**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Robert L. Johnson, Jr.**
 **First Fleet, Inc.**
 **Suntrust Leasing Corp.**
 **United States Fidelity & Guaranty Co.**

**PETERS, J.**

The plaintiffs, Ananias Johnson and Theresa Johnson (the Johnsons), appeal a trial court judgment dismissing their suit for damages for the wrongful death of their son, Tertius Johnson. For the following reasons, we affirm the trial court judgment in all respects.

### DISCUSSION OF THE RECORD

Tertius Johnson (Tertius) died as a result of injuries he sustained in a February 17, 2006 automobile accident which occurred in Iberia Parish, Louisiana. The accident occurred at the intersection of U.S. Highway 90 (Highway 90) and Hubertville Road at approximately 6:30 p.m. when the 1993 Mercury automobile driven by Tertius collided with a tractor-trailer driven by Robert Johnson, Jr. (Robert). Highway 90 at the accident location is a four-lane highway running generally east and west with a median separating the lanes. Hubertville Road runs generally north and south and intersects Highway 90 at a right angle. No traffic controls other than a stop sign are located at the intersection, but it is undisputed that traffic on Hubertville Road is required to yield to traffic on Highway 90. Although there are no street lights at the intersection, Highway 90 at that point is generally flat and open, and distance vision in both directions is significant. The speed limit on Highway 90 at the intersection is sixty-five miles per hour.

On July 5, 2006, the Johnsons brought a survival action and wrongful death suit against Robert; his employer, First Fleet, Inc.; the owner of the tractor-trailer rig, Suntrust Leasing Corporation; and United States Fidelity and Guaranty Company to recover their damages. The two-day trial on the merits began on May 14, 2012, and the evidence presented at trial raises few contested facts.

Immediately before the accident, Tertius was traveling west on Highway 90, and Robert was approaching the intersection from the north, intending to turn east onto Highway 90. Robert testified that he stopped at the intersection and looked at both the westbound and eastbound lanes before pulling into the median on the highway. He testified that it was dusk, but not dark, when he stopped at the intersection, and he observed lights in the westbound lane "four or five football fields" away. He then proceeded to the median in anticipation of completing his turn. When he reached the median, he was forced to wait on eastbound traffic on Highway 90 before making his left turn. During that time, the westbound lane of Highway 90 was blocked by his trailer with the only warning to oncoming traffic being the reflective tape on the side of the trailer. Robert testified that he had been stopped in the median for seven to ten seconds when Tertius' vehicle struck the rear wheels of his trailer.

Also, immediately before the accident, Roger Manshack was driving west on Highway 90 approaching the Hubertville Road intersection when Tertius passed him and another vehicle at a high rate of speed. He testified that he and the driver of another vehicle were driving side-by-side when he observed a vehicle in his rear view mirror approaching at a high rate of speed. According to Mr. Manshack, Tertius passed between the two vehicles down the center of the highway as both had to maneuver their vehicles to the shoulder to avoid a collision. He caught up with Tertius when he was forced to stop for a red light, but when the light changed, Tertius accelerated to a high rate of speed and left Mr. Manshack behind again. Mr. Manshack testified that Ross Armand, the passenger is his vehicle, dialed 911 to report Tertius' unsafe driving, but as they continued west on Highway 90, he observed the crash. Mr. Manshack testified that he saw the trailer blocking the

2

highway, but that Tertius was traveling so fast "he never seen the truck." He noted that after the impact, he observed two other vehicles go around the crash site without stopping.

Tertius was transported to a local medical facility where he was pronounced dead while still in the emergency room. Blood samples were taken, and subsequent tests of those samples established that Tertius had a blood-alcohol concentration of 0.11 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood. Additionally, the blood samples tested positive for the presence of marijuana, codeine, and valium. The level of codeine was forty-nine, or nineteen points above the therapeutic level for that substance; and the level of valium was 100, or fifty-one points above the therapeutic level for that substance. The physical evidence at the scene of the accident established without dispute that Tertius was traveling in excess of eighty miles per hour as he approached Robert's trailer. Additionally, Ralph Ward of Jeanerette, Louisiana, testified that Tertius passed him on Highway 90 shortly before the accident and, if he had had a cell phone, he would have called 911 because of Tertius' speed. Mr. Ward came upon the scene of the accident almost immediately after it occurred, but did not witness the accident.

At trial, both sides offered expert testimony. Michael Gillen, a Baton Rouge, Louisiana accident-reconstruction expert, testified for the Johnsons. According to Mr. Gillen, the width and opening length of the median was such that Robert did not have to leave the trailer blocking the westbound lane of Highway 90. Instead, he could have maneuvered his tractor-trailer rig at an angle such that its entire length could fit within the median opening, although in doing so Robert

3

would prevent anyone eastbound on Highway 90 from making a left turn onto Hubertville Road.

With regard to Tertius' part in the accident, Mr. Gillen testified that he attempted to calculate his perception reaction time (PRT). He suggested that this four-step process requires a recognition that an approaching driver must first perceive that something is presenting a danger and identify what the danger is. He must then go through the emotional process of deciding what to do and actually do it. After assuming that the reflectors on the side of the trailer met the standards of the Highway Regulatory Act requiring 600 feet of visibility, he concluded that a driver traveling sixty-five miles per hour would not be able to stop under normal braking conditions, but would have time if he slammed on his brakes. He also noted that the successful stopping range would vary depending on other conditions, including whether the oncoming driver had his high or low beam headlights on. At eighty-one miles per hour, his estimation of Tertius' approaching speed, he stated that it would be impossible to avoid the accident if the first recognition of the reflectors occurred 600 feet from potential impact, but had Tertius been using low beams, recognition would come at a much closer distance. Mr. Gillen suggested that he found no evidence to suggest that Tertius' substance impairment played a part in the accident. He suggested that the response time could have just as easily been reduced by other distractions such as adjusting the radio or looking in the rear view mirror.

On cross examination, Mr. Gillen acknowledged that neither Tertius' intoxication nor the presence of the other substances in his system played a part in his analysis. When he was played a 911 tape of a telephone call from a passenger in another vehicle who had witnessed Tertius driving erratically to the point of

4

nearly running someone off the highway almost immediately before the accident, he testified only that he was of the opinion that Tertius had been changing lanes on the highway. When faced with the 911 scenario, Mr. Gillen acknowledged that he would consider that activity to be reckless. Additionally, he stated that he would defer to the opinion of a toxicologist concerning the effect of substance-induced impairment. Still, given his evaluation of the accident, he remained steadfast in his conclusion that Tertius did not have adequate time in which to react based on his evaluation of the physical evidence.

Roger Allen, a Friendswood, Texas transportation consultant involving commercial motor vehicles, also presented expert testimony for the Johnsons. Mr. Allen testified that Robert violated the commercial driver's license (CDL) rules when he positioned the trailer across the westbound lane of Highway 90 on the evening of the accident, which contributed to the accident. According to Mr. Allen, Robert had a number of courses of action he could have taken to avoid even the possibility of an accident: he could have (1) waited for traffic to clear from both directions before entering the intersection to make his turn; (2) turned right (west) on Highway 90 and gone to the next intersection to maneuver into the eastbound lane; (3) pulled straight into the median and stopped at the left fog line of the eastbound lane of traffic; or (4) entered the median angling the tractor portion of the tractor-trailer rig to the left so as to clear the westbound lane entirely. Mr. Allen had no opinion concerning the effect Tertius' actions had with regard to causing the accident.

Dr. William J. George, a New Orleans, Louisiana expert in pharmacology and toxicology, testified for the defendants concerning the effect of the substances found in Tertius' system at the time of his death. According to Dr. George, Tertius

was significantly impaired at the time of the accident and his impaired condition was a contributing factor to the accident. In reaching this conclusion, Dr. George compared the levels found in Tertius to levels normally required to produce effects on the body. He noted that with regard to marijuana, Tertius' level of that substance caused him to conclude that he had used the substance within one to two hours before the accident. Dr. George testified that alcohol affects the central nervous system and vision, in addition to impairing reaction times and color recognition; valium is an anti-anxiety drug that also prolongs a reaction time and additionally can produce dizziness and drowsiness; codeine, like alcohol, affects the central nervous system and additionally restricts peripheral vision; and marijuana affects the central nervous system, affecting central tracking and critical tracking and can result in temporal distortion.

Dean Tekell, a Lafayette, Louisiana civil engineer recognized by the court as an expert in the fields of highway design, traffic engineering, and accident reconstruction, testified for the defendants. Mr. Tekell testified that an unimpaired driver would have an unobstructed view of the intersection approximately 3,800 feet east of the intersection on Highway 90, even at the time of the evening when the accident occurred. According to Mr. Tekell, it would have taken Robert approximately 9.7 seconds to move from the stop sign at Hubertville Road to the median location at the time of the accident. During that traverse time as well as the seven to ten seconds it sat at the intersection, he was of the opinion that the tractor-trailer rig should have been visible to a driver situated 3,800 feet east of the intersection on Highway 90. Using eighty-one to eighty-five miles per hour as Tertius' approaching speed and the physical evidence gathered from the scene, Mr. Tekell calculated Tertius' impact speed to be sixty-two miles per hour. With

6

regard to the reflection tape on Robert's trailer, Mr. Tekell disagreed with Mr. Gillen's 600-foot-site limitation testimony and suggested that studies accepted in the industry found that the tape was visible in dark environments 1,000 to 2,000 feet away, even with the use of low-beam headlights. Based on this opinion, Mr. Tekell concluded that Tertius could have easily stopped his vehicle within the visibility parameters of the reflection tape. Furthermore, Mr. Tekell expressed the opinion that it was physically impossible for the tractor-trailer rig to be positioned completely in the median as suggested by Mr. Allen. Finally, Mr. Tekell opined that Tertius' substance impairment was a contributing factor in causing the accident because of the delayed perception time associated with that impairment.

Upon completion of the evidentiary phase of the trial, the trial court took the matter under advisement, and on June 25, 2012, it filed written reasons for judgment wherein it found Tertius equally at fault with Robert and his employer in causing the accident. After reaching this conclusion, the trial court applied La.R.S. 9:2798.4 to its finding of fault and rejected the Johnsons' claim for damages.

The Johnsons perfected this appeal wherein they raise two assignments of error: (1) the trial court erred as a matter of law by finding Tertius fifty percent at fault in causing the accident; and (2) the trial court erred as a matter of law in rejecting the Johnsons' claim for damages through its interpretation and application of La.R.S. 9:2798.4.

**OPINION**

In its reasons for judgment, the trial court set forth its factual analysis in intricate detail and applied those factual findings to the law applicable to this accident. In doing so, the trial court found that Robert had a duty to stop at the stop sign on Hurbertville Road and not enter the intersection "unless and until such

7

movement [could] be made with reasonable safety." La.R.S. 32:104(A). The trial court found that Robert breached that duty and because of that breach, he was negligent and his negligence was a legal cause of the accident. The trial court further found that Tertius had a duty not to drive at an excessive speed and not to drive while impaired because of illegal substance use. The trial court found that Tertius breached both of these duties and that the breach of these duties was a legal cause of the accident. Based on the facts before it and the expert testimony presented by both sides, the trial court concluded that fault should be assigned equally to both parties.

This is a fact intensive case, and it is well settled that findings of fact made by a trial court are reviewed on appeal pursuant to the manifest error—clearly wrong standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A factual finding based upon a credibility determination may not be disturbed on appeal absent manifest error. *Phillips v. Fisher*, 93-928 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056. Additionally, "[w]here the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990).

In their first assignment of error, the Johnsons argue that the trial court committed an error of law in its apportionment of fault equally between the parties. However, the apportionment of fault by the trier of fact is also subject to the manifest error-clearly wrong standard of review. Additionally,

> The law provides we must give *great deference* to the allocation of fault as determined by the trier of fact. *Clement v. Frey*, 95-1119, 95-1163, p. 7 (La.1/16/96), 666 So.2d 607, 610. We are also aware that the allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and that any allocation by the factfinder within that range cannot be clearly wrong. *Foley v.*

*Entergy La., Inc.*, 06-0983, p. 32 (La.11/29/06), 946 So.2d 144, 166. Only after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award. *Clement*, 95-1119 at 7, 666 So.2d at 611.

*Fontenot v. Patterson Ins.*, 09-669, p. 22 (La. 10/20/09), 23 So.3d 259, 274 (emphasis added).

In our review of the allocation of fault by the trial court:

various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

*Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985). Additionally, "[t]hese same factors guide the appellate court's determination as to the highest or lowest percentage of fault that could reasonably be assessed." *Duncan v. Kansas City S. Ry. Co.*, 00-66, p. 11 (La. 10/30/00), 773 So.2d 670, 681.

Applying these factors to our analysis of the trial court's apportionment of fault, and giving great deference to the trial court's determination, we find no manifest error in the trial court's conclusion that both Robert and Tertius were equally at fault in causing the accident of February 17, 2006. Thus, we find no merit in the Johnsons' first assignment of error.

Their second assignment of error, however, does raise a question of law. After concluding that Tertius was fifty percent at fault in causing the accident of February 17, 2006, the trial court also concluded that La.R.S. 9:2798.4 precluded any damage recovery by the Johnsons. "Appellate review of questions of law is to discern whether the district court's interpretative decision is legally correct." *Forum for Equality PAC v. McKeithen*, 04-2477, 04-2523, p. 22 (La. 1/19/05), 893

So.2d 715, 723. "If legal error is found, the legal conclusions of the district court are thus subject to de novo review by this Court." *Id*.

Louisiana Revised Statutes 9:2798.4 provides:

A. Neither the state, a state agency, or a political subdivision of the state nor any person shall be liable for damages, including those available under Civil Code Article 2315.1 or 2315.2, for injury, death, or loss of the operator of a motor vehicle, aircraft, watercraft, or vessel who:

(1) Was operating a motor vehicle, aircraft, watercraft, or vessel while his blood alcohol concentration of 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or

(2) Was operating a motor vehicle, aircraft, watercraft, or vessel while he was under the influence of any controlled dangerous substance described in R.S. 14:98(A)(1)(c) or R.S. 40:964.

B. The provisions of this Section shall not apply unless:

(1) The operator is found to be in excess of twenty-five percent negligent as a result of a blood alcohol concentration in excess of the limits provided in R.S. 14:98(A)(1)(b), or the operator is found to be in excess of twenty-five percent negligent as a result of being under the influence of a controlled dangerous substance described in R.S. 14:98(A)(1)(c); and

(2) This negligence was a contributing factor causing the damage.

C. For purposes of this Section, "damages" include all general damages, including those otherwise recoverable in a survival or wrongful death action, which may be recoverable for personal injury, death or loss, or damage to property by the operator of a motor vehicle, aircraft, watercraft, or vessel or the category of persons who would have a cause of action for the operator's wrongful death.

D. The provisions of this Section shall not apply if the operator tests positive for any controlled dangerous substance covered by the provisions of R.S. 14:98(A)(1)(c) or R.S. 40:964 and the operator is taking that substance pursuant to a valid prescription for the identified substance or a health care provider verifies that he has prescribed or furnished the operator with that particular substance.

E. Unless the operator's insurance policy provides otherwise, nothing in this Section shall be construed to preclude the operator

10

from making a claim under his or her own policy for first party indemnity coverages.

The Johnsons do not contest the finding that Tertius' blood-alcohol concentration exceeded the 0.08 percent limit set by La.R.S. 9:2798.4(A)(1) or that he had substantial amounts of other controlled dangerous substances in his system as prohibited by La.R.S. 9:2798.4(A)(2). Instead, they argue that regardless of his level of intoxication or amount of controlled dangerous substances in his system, La.R.S. 9:2798.4 does not apply to preclude recovery absent a finding that the level of intoxication or controlled dangerous substance influence level "was a contributing factor causing the damage." La.R.S. 9:2798.4(B)(2). The trial court fell into error, according to the Johnsons, by concluding that a finding of a level of intoxication of 0.08 or above and/or the presence of a controlled dangerous substance in Tertius' system was sufficient to trigger the application of La.R.S. 9:2798.4 without consideration of anything else. Specifically, the Johnsons argue that nothing in the record supports a finding that Tertius' condition contributed to causation. We agree that had the trial court reached the conclusion as argued by the Johnsons, that conclusion would have been legal error. However, we do not find that the record supports a finding that the trial court misapplied the statute.

With regard to Tertius' fault in causing the accident, the trial court factually found that Tertius was driving eighty-one miles per hour in a sixty-five mile per hour zone at night; that he was "impaired with a blood alcohol content of .11"; that he had levels of valium and codeine in excess of therapeutic levels; and that he had ingested marijuana within two hours of the accident. Based on these factual findings which are not disputed by the Johnsons, the trial court concluded that "[Tertius'] speeding and illegal drug use likewise contributed to the accident."

11

Considering the evidence before the trial court, we find no manifest error in the trial court's factual determination that Tertius' intoxication and controlled dangerous substance use contributed to causation of the accident of February 17, 2006. Mr. Gillen testified that he did not consider Tertius' substance impairment in his opinion, and he limited his analysis to what he derived from the physical evidence at the scene. However, he did testify that he would defer to the opinion of a toxicologist concerning the effect of any substance-abuse impairment. Mr. Allen's testimony related only to what he considered Robert should have done to avoid creating the dangerous situation in the first place. Even Mr. Tekell, who testified for the defendants, testified only concerning the ability of an approaching vehicle to observe the presence of the trailer. In doing so, his opinion conflicted with that of Mr. Gillen. On the other hand, Dr. George was the only expert who specifically testified to the effect of the substances on Tertius' ability to function, and he concluded that Tertius was significantly impaired at the time of the accident and that his impairment contributed to the accident.

We find that the record does contain evidence addressing the effect of Tertius's substance abuse impairments at the time of the accident and that the trial court obviously accepted that evidence in support of it reasons for judgment. We find no manifest error in that factual finding by the trial court. Furthermore, we find no legal error in the trial court's application of La.R.S. 9:2798.4. The Johnsons' second assignment of error lacks merit as well.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court rejecting the claims for damages by the plaintiffs, Ananias Johnson and Theresa Johnson, against the defendants, Robert L. Johnson, Jr.; First Fleet, Inc.; Suntrust Leasing

12

Corporation; and United States Fidelity and Guaranty Company. We assess all costs of this appeal against Ananias Johnson and Theresa Johnson.

**AFFIRMED.**

# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 13-719

ANANIAS JOHNSON, ET AL.

VERSUS

ROBERT JOHNSON, JR. ET AL.

**Cooks, J. Dissents.**

This case involves a left-turning eighteen-wheeler entirely blocking the roadway in use by on-coming motorists at twilight on a busy highway. The truck driver asserted he made the left-turn despite the fact that he saw on-coming traffic because it is hard to get an opportunity to make such a turn on that roadway. His attorney candidly admitted this at oral argument. All that was required to make a safe left-turn in this instance was *patience*. Louisiana Revised Statutes 32:104 imposes a *mandatory duty on the left-turning motorist not to attempt a left turn* across the roadway until it can be "made with reasonable safety." Additionally, our jurisprudence has established that truck drivers, as specially trained operators of vehicles, are subject to a higher standard when assessing their degree of responsibility in an accident. They are "superior actor[s] in the eyes of the law." *Davis v. Witt*, 02-3102, p. 13 (La. 7/2/03), 851 So.2d 1119, 1128. The truck driver in this case did not want to wait as long as needed to safely make a left turn, at twilight, and he felt the oncoming drivers should have stopped to let him proceed. That is not what the law required of him. We have often held that "A left-turn is a dangerous maneuver which must not be undertaken until the turning motorist

1

ascertains that the turn can be made in safety. A left-turning motorist involved in an accident is *burdened with a presumption of liability* and the motorist must show he is free of negligence." *Reed v. State Farm Mutual Auto. Ins. Co.,* 979 So.2d 871, 874-75 (La.App. 3 Cir. 7/12/06) (emphasis added). See also *Thomas v. Champion*, 603 So.2d 765 (La. App. 3 Cir. 1992) cited in *Reed*.

Louisiana law *imposes a very high duty of care on the left-turning motorist* and *presumes he is liable* when an accident occurs during his left-turn maneuver. Here, the truck driver was blocking the entire roadway, and purposefully failed to yield the right-of-way to *all* on-coming motorists including Tertius Johnson (Tertius). As the left-turning motorist, this truck driver bears full responsibility for breach of his superior duty as a superior actor. *See Miller v. Leonard*, 588 So.2d 79 (La.1991). The impaired driver in this case is the victim of the truck driver's breach of his statutorily imposed duty which he intentionally breached merely for lack of patience. *Had this truck driver obeyed the mandatory law this deadly accident would not have occurred.* This is true regardless of Tertius' impairment. One expert testified at trial that this accident would have occurred even if Tertius had not been impaired. According to the expert at trial, the only way an on-coming motorist could see this trailer straddling the roadway at twilight was to notice some sort of reflective tape on the body of the trailer visible to an on-coming motorist only if that motorist's vehicle's high beam headlights were activated. Tertius had only his low beam lights on at the time of the accident. He was not legally required to turn on his "high beam lights."

No doubt the impaired driver in this case bears some responsibility for this deadly accident. Nevertheless, to find him more than 25% at fault assigns too

large a portion of responsibility for this accident on that driver, and insulates the truck driver from all responsibility for his *extremely dangerous and egregiously negligent action*. The majority ruling ascribes too little weight to three important factors: (1) the law imposes *a very high duty of care on this truck driver*; (2) he clearly intentionally breached his duty merely for lack of patience; and (3) truck drivers, as specially trained individuals, are "superior actor[s] in the eyes of the law [ ] held to a higher standard of care to the motoring public." *Witt,* 851 So.2d at 1128-29, and cases cited therein. Thus, the analysis for assigning degrees of fault in this case begins with 100% responsibility on the truck driver. I do not believe the legislature, by enacting the 25% cut off rule for an impaired driver involved in an accident, intended to immunize the truck driver in this case from the consequence of his egregious conduct. This truck driver posed a deadly threat on the roadway to every on-coming motorist, and only the fate of Tertius Johnson spared the other motorists soon to confront the same disaster.

I believe the assessment of 50-50 liability in this case is manifest error. I also believe the greatest responsibility for this tragic accident lies with the left-turning truck driver. For the reasons stated I must respectfully dissent.