345 So.2d 1294 (1977)
John B. WILLIAMS, Sr., Plaintiff-Appellant,
v.
J. Lenwood INABNETT and Commercial Union Assurance Company, Defendant-Appellee.
No. 5868.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1977.
*1295 Gahagan & Gahagan by R. E. Gahagan, Natchitoches, for plaintiff-appellant.
Joe M. Inabnett, New Orleans, Thomas & Dunahoe by G. F. Thomas, Jr., Cook, Clark, Egan, Yancey & King by Steven H. Beadles, Shreveport, for defendant-appellee.
Before HOOD, FORET and HEARD, JJ.
HEARD, Judge.
This suit was instituted by the plaintiff, John B. Williams, Sr., against J. Lenwood Inabnett and his insurer, for damages sustained by the plaintiff when his three quarter ton pickup truck was struck while making a left turn off Highway 71 in Natchitoches Parish by a 1974 Lincoln automobile *1296 being driven by the defendant, J. Lenwood Inabnett. At the time of the accident, the truck was also occupied by two minors, namely Stan Nash and Lonnie Houston. Nash and Houston filed separate suits against Inabnett and his insurer, Commercial Union Assurance Company. The defendants answered the petitions denying negligence, and pleading alternatively contributory negligence as to Williams. In the suits by Nash and Houston, the defendants made a third-party demand against Williams for contribution. Inabnett reconvened against Williams and his insurer, Dixie Automobile Insurance Company for damages. The cases were consolidated for trial and tried on their merits in the Tenth Judicial District Court.
The trial court in a well written opinion held that both Inabnett and Williams were concurrently guilty of negligence in causing the accident. Judgment was rendered in favor of Nash for general and special damages in the amount of $1,290.00 and in favor of Lonnie Houston for general and special damages in the amount of $1,176.00 against the defendants, J. Lenwood Inabnett and his insurer, Commercial Union Assurance Company. The demand of John B. Williams, Sr. against the defendants were rejected and the reconventional demand of Inabnett against Williams was rejected. The third-party demands against Williams and Dixie Automobile Insurance Company were also rejected. Only Williams has appealed. He asserts that the issues to be determined are: (1) Was Inabnett guilty of negligence; (2) if so, was Williams guilty of contributory negligence; and (3) if so, did Inabnett have the last clear chance to avoid the accident.
In his reasons for judgment the trial court very accurately sets forth the facts of the accident which we take the liberty of quoting.
"This accident happened in Natchitoches Parish, on Louisiana Highway 71, on the afternoon of Tuesday, October 14, 1975, at approximately 3:00 o'clock P.M. The highway at this point was straight and the weather was fair and clear. All vehicles involved in this collision were traveling in the same direction, which was northerly.
"John B. Williams, Sr., age 63, as of the date of the accident, was the owner and driver of a three quarter ton Chevrolet pickup truck, being used to haul bales of hay. Williams had entered Louisiana Highway 71 at a point about 1.6 miles south of the accident scene. His truck was not loaded, as the driver and the two young boys accompanying him, namely Stan Nash and Lonnie Houston, both 16 years of age, were returning from delivering a load of hay with the intent to reload the truck to deliver a "final" load of hay. The area on both sides of the highway at the scene of the accident is rural farming land.
"Williams had been obtaining the hay from the farm adjacent to the highway. As he approached the private entrance to the farm, Williams began to decrease his speed from 30 miles per hour to about 5 miles per hour.
"The traffic on Highway 71 on this date had been materially increased due to the temporary closing of Highway 84 from Clarence to Winnfield, and such traffic was detoured over this portion of the highway.
"As Williams began to slow down his truck, several cars came up behind so there were at least three vehicles following Williams as he prepared to make his left turn from the highway. Immediately behind Williams was a Volkswagen, another car, and then a large F-600 Ford Truck driven by a Jack Collins. Williams put on his left blinker lights, and having seen through his rearview mirror the several cars lined up behind him, began his left turn maneuver. This left turn by Williams was a gradual drifting to the left and not an abrupt turn.
"At approximately the same time Williams began his slow left turn, J. Lenwood Inabnett, age 68 at the date of the accident, was driving his 1974 Lincoln automobile. Inabnett came up behind the four vehicles and seeing no on-coming cars from the north began a passing maneuver by entering the left lane and speeding up the car to pass the slower vehicle.
*1297 "One Jeff Burch, driver of the car immediately behind Williams' truck, stated he thought he would pass the truck but on looking in his rearview mirror, saw the approaching Lincoln. He estimated the Lincoln speed at the scene at 65 to 75 miles per hour. At the trial he lowered the speed at 55 miles per hour. Burch stated Williams had begun his turning when he saw the Lincoln car enter the passing lane.
"The third vehicle behind the Williams truck was a large F-600 Ford truck being driven by the witness Jack Collins. Collins' seat in the cab of this truck was at such an elevation that he was able to see the Williams truck in front and by means of his rearview mirror was able to observe the oncoming of the Inabnett car. Collins gives a graphic narrative of an onlooking person seeing the developments of a succession of events that resulted in the accident but being unable to prevent same. Collins stated he saw the Lincoln car in his rearview mirror coming down the road and its movement into the passing lane, at the same time Collins saw the Williams truck turning to its left. He was so alerted to the oncoming possible collision that he automatically turned on his flashing lights on his truck and remarked to his passenger, "watch this." He gave his estimate that the Lincoln was within 100 yards of his truck when this action was taken by him.
"The Williams truck had reached the position that its front wheels were off the blacktop portion of the left lane at an angle to the right. The Inabnett car struck this truck with the front of the car on the left rear corner of the truck. This caused the truck to spin to its right.
"This accident resulted in damages to the Williams truck; the Inabnett car; and physical injury to John B. Williams, Sr., Stan Nash and Lonnie Houston."
The first issue asserted by plaintiff-appellant is "Was Inabnett guilty of negligence?"
The trial court found that Inabnett was driving at an excessive rate of speed under the circumstances. Trooper J. T. Chambers found 75 feet of skid marks made by the Lincoln automobile prior to the collision. He estimated that Inabnett was traveling at approximately 55 miles per hour prior to the braking action. Burch testified at one time the Lincoln was traveling between 65 and 70 miles per hour. At the time of trial, he testified 55 miles per hour. Burch and Collins both were aware of the actions of Williams and Inabnett and presumed that there would be an accident. The trial court further stated that there was no reason why Inabnett should not have been so alerted and taken some remedial action to prevent the accident. Inabnett did not deny seeing the blinking lights on the Williams truck or the flashing caution lights on the Collins truck. He did not reduce his speed until it became too late to avoid the collision. We conclude as did the trial court that Inabnett was guilty of negligence which contributed to the accident.
The next question posed by plaintiff is "Was Williams guilty of contributory negligence?" The testimony is clear as stated by the trial court that Williams made a left turn into a private driveway in a rural area. He knew there were several cars behind him. He saw them in his rearview mirror. He turned on his blinker light to make a left turn, did not look to his rear except through his rearview mirror. He never saw the Inabnett car until immediately prior to the collision.
The duties of care imposed upon one who would turn left from a highway into a private drive is set forth in LSA-R.S. 32:104 as follows:
"104. Turning movements and required signals.

A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then *1298 traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal. Acts 1962, No. 310, ¶ 1; Acts 1963, No. 33, ¶ 2."
In the case of Bamburg v. Nelson, 313 So.2d 872, 874 (La.App. 2 Cir. 1975), the court stated:
"Although the driver making a left turn is not deemed ipso facto negligent, the cases which characterize the maneuver as dangerous and setting forth the duty of the left turning vehicle are numerous. The duty of the left turning motorist is two-fold, the first being to give a proper signal and secondly to make proper observation that the turn can be made without endangering an oncoming or overtaking vehicle. See Lewis v. Liberty Mutual Insurance Company, 215 So.2d 138 (La.App. 3 Cir. 1968). A left turner must not only give an adequate signal of his intention but also make adequate observation to his rear to ascertain that the turn can be safely made. Ardoin v. Chachere, 207 So.2d 574 (La.App. 3 Cir. 1968)."
See also Star Dusters, Inc. v. Lee, 311 So.2d 566, 568 (La.App. 3 Cir. 1975).
We conclude as did the trial court that Williams did turn on his blinker light signifying his left turn but failed to maintain observation to his rear as required by law, contributing to the accident.
Plaintiff lastly poses the question "Did Inabnett have the last clear chance to avoid the accident?"
For the doctrine of last clear chance or discovered peril to apply, Inabnett must have discovered Williams in a position of peril at a time when Inabnett could have taken some action to avoid the accident.
The evidence is clear that after Inabnett entered the passing zone with the several cars in front of him and discovered Williams in his left turn maneuver, there was nothing that he could have done to avoid the accident except apply his brakes, which he did, leaving 75 feet of skid marks.
We conclude that the doctrine of last clear chance has no application in this case.
For the foregoing reasons the judgment of the trial court is affirmed. Costs of appeal to be paid by plaintiff-appellant.
AFFIRMED.