WALTER J. ROTHSCHILD, Judge.
12Sharon Lewis filed this negligence action against her father, Clifton Jones, and his homeowner’s insurer, Allstate Insurance Company, after she sustained a fall in Mr. Jones’ home. Following a jury trial, judgment was rendered partially in favor of defendants, and plaintiff now appeals on the basis of several assignments of error. We affirm.
In her petition, Sharon Lewis alleged that on March 7, 2006, she was a visitor to her father’s home in Marrero, Louisiana. While walking on the floor of the dining room, she stepped onto a worn or soft spot and the floor buckled and collapsed, causing her foot to go through the flooring. Plaintiff alleges that Mr. Jones lived in the home for over 50 years and was aware or should have been aware of soft spots in the flooring, yet failed to repair them or warn Mrs. Lewis of their existence. Plaintiff further alleges that Mr. Jones is liable for the defective condition and ruin of the flooring, and that the home was insured by Allstate, who was liable in solido with Mr. Jones.
Defendants answered the petition and requested a jury trial. Prior to trial, defendants filed a Motion in Limine seeking to have the recorded statement of | sClifton Jones read to the jury and placed into evidence, as Mr. Jones is now deceased. Plaintiff opposed this motion on the basis that defendants failed to produce Mr. Jones for a deposition on at least two occasions in 2007 upon the request of plaintiff. Further, plaintiff argued that the statement was unreliable as two investigators took two separate statements and asked leading questions to avoid answers which were against Allstate’s interest. The trial court granted the motion, allowing the parties to introduce the recorded statements of Clifton Jones.
On August 5, 2010, the morning of trial, plaintiff dismissed her claims against Clifton Jones and the Estate of Clifton Jones, reserving her rights against Allstate as the homeowner’s liability insurer of Mr. Jones on the date of this accident.
At trial, plaintiff testified that following an evacuation due to Hurricane Katrina, she was living in Houston in 2006. On March 7, 2006, plaintiff went to visit her father at his home in Marrero. The last time she had visited her father was Christmas 2005. As soon as she arrived at the house in 2006, she hugged her father and then proceeded across the floor to plug in her cell phone. At this point, the floor collapsed and she fell through the floor. She stated she was aware the house was undergoing repairs, but she was not aware of the condition of the floor. She was also not sure at the time whether her father knew of the floor’s condition. However, she testified she later learned that there was another hole in the floor which occurred when her sister and niece removed the carpeting from the floor, and that her father should have known the floor was rotten.
Plaintiff also testified that she sought treatment for her injuries when she re *562 turned to Houston. She stated that before the accident, she was very active, including visiting with her children and grandchildren, singing, cooking, sewing, beading, fixing hair and travelling for church. However, after the accident, she is |4no longer able to do these activities because of the pain and pressure from standing or sitting for long periods.
Plaintiff also presented the testimony of Latoya Joseph, Mr. Jones’ granddaughter and plaintiffs niece. Ms. Joseph testified that in 2006, she visited with Mr. Jones at his home several times and during this time she assisted in pulling up carpet from the dining room floor. She stated she noticed that the floor was “rotten” in several spots. Ms. Joseph testified that her grandfather was aware of the condition of the floor. Ms. Joseph also testified that prior to this accident, Mrs. Lewis loved to travel and cook, and kept her house in good condition. She noticed that following this accident, Mrs. Lewis was unable to complete daily activities, including cooking and cleaning, because of the pain from her injuries.
Plaintiff also presented the testimony of Lana Thompson, plaintiffs sister and Mr. Jones’ daughter. Ms. Thompson lived with Mr. Jones in his home prior to his death. Ms. Thompson stated that Mr. Jones made a claim with Allstate for the damage to his home following Hurricane Katrina, and that she was present when the adjuster came to the home. She also stated that she observed her sister and her niece remove the carpet from the dining room floor and that she saw that the floor was old and damaged. The removal of the carpet resulted in a hole in the floor and Ms. Thompson placed a box over the hole to prevent anything from coming into the house through the floor. Ms. Thompson stated that Mr. Jones was aware of this hole.
However, Ms. Thompson stated that Mrs. Lewis fell through a different part of the floor in a nearby area of the same room. Ms. Thompson also testified that before her injuries, Mrs. Lewis loved to cook, clean and travel, but that she is no longer able to do these things because of the pain from the injuries.
| ¡¿Plaintiff also presented medical evidence, including her hospital and physicians’ records, as well as the video deposition of Dr. Hong Nguyen and Dr. Matthew Grimm.
Following the presentation of plaintiffs case, defendant played for the jury the audiotaped statement of Clifton Jones, which was taken by an Allstate adjuster on March 22, 2006, approximately 2 weeks after the accident. In the recording, Mr. Jones stated the floor in his home had been damaged following Hurricane Katrina, and that when his daughter came to visit, he did not know the floor was rotten and did not know to warn her about the condition.
Following trial, the jury found Mr. Jones to be negligent, which they found to be a proximate cause of his daughter’s injuries. His fault was set at 50%. The jury also found that plaintiffs own negligence was a proximate cause of her injuries, and her fault was also set at 50%. Plaintiff was awarded $40,000.00 in general damages and $7,500.00 in medical expenses. Mrs. Lewis responded to this verdict with a Motion for Judgment Notwithstanding the Verdict (JNOV), Motion for New Trial and Motion for Additur. These motions were denied by the trial court on February 17, 2011, and it is from this judgment that plaintiff now appeals.

Admissibility of the Statement

By her first assignment of error, plaintiff argues that the trial court abused its discretion by permitting defendant to *563 read the second statement of Clifton Jones to the jury. Plaintiff argues that the second statement is suspect as it was different from an earlier statement taken by another Allstate investigator, and it appears Mr. Jones was coached by the investigator. Plaintiff further argues that because defendants failed to present Mr. Jones for a deposition prior to trial, the statement cannot be used as evidence.
16Prior to trial in this matter, the trial court granted defendants’ motion in li-mine to allow introduction of the statement of Clifton Jones as he was unavailable as a trial witness because of his death. At trial, defendants played to the jury an audiotaped statement of Mr. Jones taken over the telephone by David Houser on March 22, 2006. The record indicates that this was the first statement of Mr. Jones taken by Allstate. A copy of the transcript of both statements is attached to plaintiffs opposition to the motion in li-mine. The second statement was taken on March 23, 2006 in Mr. Jones’ home while his daughter Lana Thompson was present. Although the first statement was read to the jury, the substance of both statements is similar. Mr. Jones stated that he did not know the flooring was rotten, but he provided very few details of the circumstances of the accident other than his daughter fell in his home.
Questions of admissibility of evidence fall within the province of the trial court. La. C.E. art. 104(A). Because of Mr. Jones’ death prior to trial, he was an unavailable witness at trial. La. C.E. art. 804(A)(4). La. C.E. art. 804(B)(6) states in part that a statement by an unavailable witness will not be excluded by the hearsay rule in this circumstance:
(6) In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it.
|7We find that the statement of Mr. Jones met the criteria of the foregoing statute and was properly admitted into evidence by the trial court on this basis. See, Cross v. Lake Area Rehab. Services, Inc., 00-224, p. 6 (La.App. 3 Cir. 10/11/00), 771 So.2d 768, 771. The only evidence of Mr. Jones’ knowledge of the condition of the floor is contained in his statements, and there is no reason to find such statements are not trustworthy. Although plaintiff argues she was prevented from taking the deposition of her father, the record fails to contain evidence that such a deposition was compelled by her.
Further, after review of both statements contained in the record, we fail to find that the statement played for the jury was “suspect” or that the substance of the two statements was conflicting. In addition, plaintiff was free to introduce the second statement into evidence or to examine Mr. Jones’ daughter on any discrepancies as she was present during both statements.[1] Plaintiff failed to meet her burden to show that the statement of Mr. Jones was im *564 properly admitted as evidence in this case. Under these circumstances, we find no abuse of the trial court’s discretion in allowing the previous statement by Mr. Jones to be admitted into evidence.

Comparative Fault

Plaintiff next argues that the jury erred in its assessment of comparative fault when there was a lack of evidence that she knew or should have been known of the condition of the floor prior to walking on it. She argues that photographs of the flooring admitted into evidence fail to indicate an obvious defect which she should have noticed as she walked into the house. Further, she contends that because her [^father failed to warn her of the condition of the floor, it was error to find any comparative fault on her part.
Comparative fault is governed by La. C.C. art. 2323. It is well settled that the assessment of comparative negligence is a factual matter within the sound discretion of the trial court, and such determination by the trier of fact will not be disturbed on appeal in the absence of manifest error. Gibson v. State, Department of Transportation and Development, 95-1418, 95-1419 (La.App. 1 Cir. 4/4/96), 674 So.2d 996, 1004, writs denied, 96-1862, 96-1895, 96-1902 (La.10/25/96), 681 So.2d 373, 374.
In the present case, we are unable to determine that the factual determinations of the jury were manifestly erroneous. Plaintiff testified she was aware that repairs were being made in the house at the time of her visit, and she was aware the house had been damaged in Hurricane Katrina the previous year. The photographs submitted into evidence depict a home under construction, and although Mr. Jones did not warn plaintiff of the condition of the floor, plaintiff should have known to proceed with caution into a home under repairs. The jury apparently concluded that plaintiffs actions contributed in part to her accident, and we will not disturb this finding in the absence of manifest error.

Quantum

Plaintiff contends the jury was manifestly erroneous in only awarding $40,000 in general damages where she presented evidence that she still suffered from pain in her hip and low back over four years after the accident and that the injury was permanent and restricted her physical activities. Considering these injuries, plaintiff submits that an award of $100,000 is the least amount the court is authorized to award.
|flThe assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id.
The record contains the videotaped deposition testimony of Dr. Hong Nguyen, an internist, who saw plaintiff in March of 2006, 3 weeks after her fall. He prescribed pain medication and plaintiff returned to see him in June of 2006 with the same complaints. Dr. Nguyen referred plaintiff to an orthopedist, Dr. Grimm.
Dr. Matthew Grimm, an orthopedist, stated that Mrs. Lewis came to see him in June of 2006 for hip and back pain that she stated was caused by a fall in her father’s home three months earlier. Dr. Grimm treated her with steroid injections, anti-inflammatory medication and physical therapy, and he related her injuries to the accident as plaintiff described it to him. Dr. Grimm subsequently ordered an MRI, *565 which showed degenerative changes and arthritis in plaintiffs spine. However, he stated the changes were consistent for someone her age and the MRI as a whole was “unremarkable.”
Dr. Grimm state he diagnosed plaintiff with sciatica. Dr. Grimm also stated that plaintiff complained of knee pain in 2008, but he did not have an opinion on the cause of that symptom. Dr. Grimm stated that plaintiff continued to experience hip pain into 2008, and he ruled out the presence of a herniated disc. Dr. Grimm then referred her to Dr. Katz, an orthopedic surgeon. In 2009, he referred plaintiff to a neurosurgeon who did not think plaintiff was a candidate for surgery. Dr. Grimm stated that based on the history he had from plaintiff, he attributed her | ^injuries to the fall at her father’s house. He was not able to assign a disability rating.
On the basis of the medical evidence and plaintiffs testimony regarding the impact of the injuries on her physical and emotional condition, the jury awarded plaintiff $40,000 in general damages. Without providing jurisprudential support therefor, plaintiff contends that the lowest award plaintiff should have received for her injuries was $100,000.
The record in this case supports the jury’s award. Medical evidence indicates that plaintiff sustained an aggravation to her hip and spine that Dr. Grimm diagnosed as sciatica. However, the injury was not permanent and surgery was not recommended. She did not sustain a herniated disc. The objective medical evidence did not show more than normal degenerative changes in her hip and spine. She was treated through 2008, and the evidence of treatment in 2009 and 2010 was sporadic. Although plaintiff contends that her injuries were ongoing at the time of trial, Dr. Grimm stated that by December of 2007, plaintiff was told to engage in any activity she felt comfortable doing. Under these circumstances, we fail to find the jury abused its discretion in setting the general damage award and we will not disturb it.

Medical Expenses

Plaintiff argues that the jury erred in disregarding the medical evidence of plaintiffs physicians regarding the amount of her medical bills. However, we fail to find the jury was manifestly erroneous in its award of medical expenses. Dr. Grimm testified he based his opinions of the cause of plaintiffs injuries on her history, and the objective medical evidence failed to support a permanent injury to plaintiffs hip or spine. Dr. Grimm was unable to state the cause of plaintiffs knee pain, and did not relate this injury to her earlier fall. Although plaintiff testified |nthat she continues to experience pain and to be restricted in her activities, no permanent disability rating was assigned and a continuing medical condition is not supported by the record. The jury apparently failed to attribute all of plaintiffs medical treatment to her fall. We find that this factual determination is reasonably supported by the record, and we fail to find an abuse of discretion in the jury’s award of medical expenses.

JNOV

By her final assignment, plaintiff contends that the trial court erred in failing to grant her Motion for Judgment Notwithstanding the Verdict (JNOV) to raise the award of medical expenses to the amount of the medical bills introduced into evidence. A JNOV is properly granted ‘only when the facts and inferences are so strongly and overwhelmingly in favor of one party that the trial judge believes reasonable men could not have arrived at a contrary verdict. Mendoza v. Mashburn, 99-499, p. 6 (La.App. 5 Cir. 11/10/99), 747 *566 So.2d 1159, 1163-64, writ not considered, 00-40 (La.2/18/00), 754 So.2d 957 and writ not considered, 00-43 (La.2/18/00), 754 So.2d 957 and writ denied, 00-37 (La.2/18/00), 754 So.2d 976. In considering a motion for JNOV, the trial court may not weigh the evidence, substitute its judgment of facts for that of the jury, or pass on the credibility of witnesses. Id.
Plaintiff argues that a JNOV was appropriate because the jury failed to award the full amount of medical expenses to plaintiff, although there was ample support in the record therefor. However, as we have previously discussed, the jury was not required to attribute all of plaintiffs medical expenses to the accident in this case. We have found that the record reasonably supports the jury verdict with |12regard to medical expenses, and the trial court did not err in denying plaintiffs motion for JNOV on this issue.
Accordingly, for the reasons assigned herein, the judgment of the trial court is affirmed.

AFFIRMED

. Although the first statement was recorded in a telephone conversation, Mr. Jones’ statements indicate that his daughter Lana Thompson was in the house at the time.