# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-502

**OLIVER RABON**

**VERSUS**

**JAMES SMITHKORS, ET AL**

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2015-6014
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

************
**SYLVIA R. COOKS**
**JUDGE**
************

Court composed of Sylvia R. Cooks, John D. Saunders and Candyce G. Perret, Judges.

**REVERSED AND RENDERED.**

**Jeffery F. Speer**
**George A. Wright**
**Doucet-Speer, APLC**
**617 St. John Street**
**P.O. Drawer 4303**
**Lafayette, LA 70502**
**(337) 232-0405**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Oliver Rabon**

**Brendan P. Doherty**
**Bradley J. Schwab**
**Geiger, Laborde & Laperouse, LLC**
**One Shell Square**
**701 Poydras Street, Suite 4800**
**New Orleans, LA 70139**
**(504) 561-0400**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **James Smithkors and ABC Supply Company**

**COOKS, Judge.**

This appeal arose out of a motor vehicle accident that occurred in Lafayette, Louisiana on August 26, 2015. On that date, at around 10:30 a.m., Plaintiff, Oliver Rabon, was driving his Chevrolet Tahoe eastbound on Southpark Drive in Lafayette Parish. Defendant, James Smithkors was driving westbound on Southpark Drive in a thirty-five foot International truck with a forklift attached to its rear. The truck was owned by Defendant, ABC Supply Company, who Smithkors was driving for.

The record established Smithkors, who testified he was lost and looking for a place to turn his truck around, attempted to make a left turn across the oncoming lane of traffic to turn into a parking lot. During the execution of the turn, Rabon's vehicle struck the very rear of the forklift attached to the back of the ABC Supply truck. The details surrounding the attempted left turn, the actual location of the collision, i.e., whether it was on the roadway or off, and whether any injuries allegedly suffered by Rabon were caused by the accident were disputed.

Rabon filed suit against Smithkors and ABC Supply for the injuries he allegedly incurred as a result of the accident. On December 12, 2016, a bench trial was held on the matter. Rabon and Smithkors presented different versions of the facts surrounding the accident.

Rabon testified he was driving at a legal speed when suddenly the truck driven by Smithkors turned in front of him. Rabon stated he immediately applied his brakes and quickly steered his vehicle to the left side of his lane in an attempt to avoid any collision. Rabon stated that, had he driven to the right, he would have then broadsided the truck, which would have led to significantly greater damage. He also noted had he gone any further left he would have been in the other lane and subject to colliding with oncoming traffic. He maintained his decision to steer to the far left of his lane lowered the overall damage sustained in the accident.

2

Rabon stated immediately following the collision, he pulled his vehicle off the side of the road and was preparing to exchange information with the driver of the truck. However, upon stopping his vehicle and preparing to exit, he saw the truck had completed its turn and was reentering Southpark Drive to head away from the scene. Rabon then followed the truck and upon stopping it, called the police.

Shortly after the accident, Rabon testified he felt increasing pain and stiffness in his neck and back. He went later that day to Lafayette General Medical Center to seek medical attention. After being examined, Rabon was told to take a few days off of work and then report to his primary care physician if things did not improve. Rabon took the remainder of the week off and returned to work the following Monday. After he continued to experience significant pain in his neck and back, Rabon went to see Dr. Robert Franklin for further treatment. Rabon was treated conservatively by Dr. Franklin with medication and physical therapy.

Rabon testified he continued to work as best he could while attending three therapy sessions per week. By the beginning of October 2016, Rabon testified he was unable to continue performing his work duties as a welder due to severe pain. Dr. Franklin determined Rabon should be placed on light duty; however, Rabon's employer did not have any light duty positions available and Rabon was forced to stop working.

On October 20, 2015, Dr. Franklin concluded physical therapy was not providing any meaningful relief to Rabon, and referred him to Dr. Mark McDonnell, a spine surgeon. Dr. McDonnell performed a lumbar steroid injection in an attempt to alleviate Rabon's pain, with limited success. A MRI was performed, which revealed degenerative changes. Dr. McDonnell also wanted Rabon to undergo a discogram of the lumbar spine to fully determine the extent of his injuries. At trial, Rabon testified his degenerative changes were made

3

symptomatic by the trauma he suffered in the accident, causing him significant pain and requiring him to stop working.

Smithkors testimony differed from that of Rabon. Smithkors testified he made a wrong turn that morning. After realizing that, he continued driving down Southpark Drive until he saw an area where he believed he could turn his truck around. He stated he saw a parking lot big enough to turn around in, but needed to make a left turn across the eastbound lane to enter a private driveway leading to the parking lot.

He stated he activated his left turn signal and checked the eastbound lane for oncoming traffic. He testified he saw Rabon's vehicle about 300 to 500 feet away but believed he could safely complete a left turn of his truck prior to Rabon's vehicle traveling that distance. Smithkors also testified it was his opinion Rabon had ample distance to slow his vehicle down to avoid any collision. Therefore, Smithkors began his left turn.

Smithkors testified he did not hear any brakes locking or tires skidding while executing the left turn. He also testified he did not feel any impact to his truck, which was why he drove off from the scene after turning the truck around. Smithkors maintained he was not aware there had been any collision until after he was stopped. He then returned to the accident scene with Rabon.

Smithkors testified the only debris he saw was a piece of plastic fender, which he assumed was from Rabon's vehicle, located over the shoulder line in the private driveway leading to the parking lot. He also testified he saw no skid marks at the scene. Smithkors took pictures of the damage, which showed the impact was to the far back end of the forklift.

Following trial on the merits and accepting post-trial memorandums from both parties, the trial court ruled in favor of Defendants, determining the "testimony and evidence adduced at trial [did] not support Rabon's testimony."

4

The trial court determined the "evidence and testimony indicate that the collision occurred outside the lane of travel on the shoulder of the roadway." This finding was made despite an earlier statement in the trial court's written reasons, that found "that Smithkors had *almost fully completed* his turn in to the driveway when the collision occurred." (Emphasis added.) Because it determined the accident occurred while Rabon was on the shoulder of the road, the trial court found the presumption of negligence the law places on left-turning motorists should not apply in this case. The trial court concluded the "heightened duty of care as a left-turning motorist terminated once [Smithkors'] truck completed the turn off the roadway in to the private driveway where the collision occurred." Therefore, the trial court found Rabon failed to prove "Defendants' breach was the cause-in-fact of the accident," and dismissed Rabon's case. As a result, the trial court did not address any arguments as to the causal relationship between Rabon's medical problems and the accident.

Rabon appealed the judgment of the trial court, asserting the trial court erred in not applying the presumption of negligence the law places on left-turning motorists when the evidence did not support the factual conclusion that the collision occurred outside of the lane of travel.

## ANALYSIS

Any analysis of the facts in this case must begin with a discussion of La.R.S. 32:104, which places a presumption of negligence on left-turning motorists when an accident occurs. It provides, in pertinent part, as follows:

> A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

5

A motorist making a left-turn is required to provide a signal at least 100 feet from the intersection, private road or driveway and to refrain from crossing the center line "until such movement can be made with reasonable safety." La.R.S. 32:104(A). Moreover, when an accident occurs during a left-turn, the courts have held a left-turn is a dangerous maneuver and burdens the left-turning motorists with a presumption of negligence. This jurisprudential standard was articulated by this court in *Thomas v. Champion Ins. Co.*, 603 So.2d 765, 767 (La.App. 3 Cir. 1992), as follows:

> A left turn is generally a dangerous maneuver which must not be undertaken until the turning motorist ascertains that the turn can be made in safety. *Agency Rent-A-Car, Inc. v. Hamm*, 401 So.2d 1259 (La.App. 1 Cir.1981). A left-turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show that he is free of negligence. *Bennett v. United States Fidelity & Guaranty Company*, 373 So.2d 1362 (La.App. 1 Cir.1979), *writ denied*, 376 So.2d 1269 (La.1979). Also *Williams v. Inabnett*, 345 So.2d 1294 (La.App. 3 Cir.1977).

"Additionally, our jurisprudence has established that truck drivers, as specially trained operators of vehicles, are subject to a higher standard when assessing their degree of responsibility in an accident. They are 'superior actor[s] in the eyes of the law.'" *Johnson v. Johnson*, 13-719, p. 9 (La.App. 3 Cir. 12/11/13), 128 So.3d 627, 635, *quoting Davis v. Witt*, 02-3102, p. 13 (La.7/2/03), 851 So.2d 1119, 1128.

A review of the trial court's written reasons contradict its eventual finding. The trial court specifically noted in its written reasons that the "photographs, the location of the debris from the accident and the testimony of the parties indicate that Smithkors had *almost fully completed* his turn in to the driveway when the collision occurred." (Emphasis added.) This statement by the trial court clearly indicates its belief that Smithkors was unable to fully complete the attempted left-turn. This left Rabon in a position where he could only avoid a collision by entering the other lane of traffic, and subject himself to potential life threatening harm from oncoming traffic. It is not reasonable to place such a burden on Rabon,

6

and the law does not support the trial court's decision. The evidence shows the impact was to the back end of the forklift and the passenger side of Rabon's vehicle, which supports Rabon's testimony that he went as far left in his lane of travel as possible. The evidence convincingly establishes that Rabon substantially mitigated the potential severity of the accident with the actions he took.

It appears the trial court based its decision largely on a photograph introduced into evidence which showed a single piece of debris, assumed to be from Rabon's plastic fender, lying a short distance off the road. As Rabon notes, there was no evidence or testimony to show how the piece of debris got to that location. He also notes, a small piece of fender such as the photograph depicts, could easily travel a considerable distance as a result of a collision. Moreover, it was several minutes after the collision before Smithkors and Rabon returned to the accident scene. Numerous cars and trucks would have traversed that area, likely moving any piece of debris off the roadway. Thus, the location of a small piece of debris slightly off the roadway is not indicative as to where the accident may have occurred. Using that fact to disregard the presumption of liability the law places on Smithkors was clear error.

The trial court disregarded the presumption of liability relying on this court's opinion in *Reed v. State Farm Mut. Auto. Ins. Co.*, 05-1532 (La.App. 3 Cir. 5/3/06), 929 So.2d 871. In *Reed*, this court chose not to apply the presumption of liability because we found the oncoming driver was operating a dirt bike, which was not equipped with headlights, at night and was traveling on the shoulder of the road as opposed to the lane of travel. The facts in *Reed* are clearly distinguishable from the present case and do not support the trial court's decision. In this case, the trial court wrote that "Smithkors' heightened duty of care as a left-turning motorist terminated once his truck completed its turn off the roadway into the private

7

driveway where the collision occurred." This is in direct contrast to the trial court's earlier finding that Smithkors' truck had not fully left the lane of travel.

We find, contrary to the trial court, that the testimony and evidence adduced at trial supports Rabon's version of the facts. Rabon stated he was driving at the speed limit when Smithkors suddenly pulled in front of him. He testified he applied his brakes and attempted to steer his vehicle as far left as possible without crossing into oncoming traffic. Despite this, he stated the front right of his vehicle collided with the back right of the forklift being towed by Smithkors. The documented physical damage correlates perfectly with Rabon's version of the events.

In the present case, there is no dispute that Smithkors was the left-turning motorist. Thus, he was burdened with the presumption of liability pursuant to La.R.S. 32:104. It was then Defendants' burden, not Rabon's, to prove he was free of negligence. Our review of the record establishes that Defendants fell woefully short of carrying that burden.

***Cause-in-Fact of Injuries.***

Defendants argue even if this court were to find the trial court committed reversible error in finding Smithkors' actions were not a cause-in-fact of the accident, we should nevertheless affirm the judgment because Rabon failed to meet his burden of establishing a causal relationship between his complained of injuries and the accident. We disagree.

The testimony of Dr. Franklin established Rabon suffered from degenerative changes to his cervical and lumbar spine. Dr. Franklin testified trauma such as suffered by Rabon in the subject accident could make those degenerative changes symptomatic. Defendants presented the testimony and report of Dr. Stanley Foster, who examined Rabon at Defendants' request and reviewed all the medical records. Dr. Foster acknowledged in his report that Rabon had underlying

8

structural changes to his spine, though he suggested the only evidence the changes were made symptomatic was through Rabon's subjective complaints of pain.

Defendants note Rabon sustained a previous back injury in 1997 for which he sought treatment from Dr. Franklin. Dr. Franklin noted in his deposition the pain Rabon suffered following the 1997 accident subsided. It is uncontradicted that Rabon returned to work very shortly following the 1997 accident. He remained gainfully employed as a welder since that time up until shortly after the August 2015 accident.

Following the accident at issue, the records established Rabon took a few days off of work as was suggested by the emergency room doctor on the day of the accident. He then returned to work, and when his pain did not improve, he sought treatment from Dr. Franklin. His history to Dr. Franklin, Dr. McDonnell and to Dr. Foster stated his pain began at the time of the August 2015 accident. While Defendants and the physicians note Rabon's complaints are subjective in nature, according to Dr. Franklin, that is not unusual for an exacerbation of preexisting, degenerative disc changes. Even Dr. Foster acknowledged seeing underlying degenerative changes present in Rabon's MRI that could have been made symptomatic by the accident. Therefore, we find the evidence establishes by a preponderance of the evidence that the pain suffered by Rabon was caused by the August 26, 2015 accident.

***Damages.***

We find Rabon suffered injuries as a result of the automobile accident that was the sole fault of Defendant, James Smithkors. Therefore, Rabon is entitled to be compensated for his injuries. Appellate courts are authorized to render any judgment which is just, legal and proper where the trier of fact is clearly wrong in failing to do so and where the record contains sufficient proof of damages. La.Code Civ.P. art. 2164; *Broussard v. Medical Protective Co.*, 06-331, p. 4

(La.App. 3 Cir. 2/21/07), 952 So.2d 813, 818. In making an initial award of damages, the appellate court is not limited to either the highest or lowest in the range of awards which we would have found on appeal. Rather, the award should represent an amount which is fair and just based on the damages sustained. *Broussard*, 952 So.2d at 818; *Morris v. Owens-Illinois, Inc.*, 582 So.2d 1349 (La.App. 2 Cir. 1991).

When a plaintiff alleges that medical expenses were incurred "and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment." *Este v. State Farm Ins. Co.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857. Our review of the record finds the following past medical expenses are properly awardable to Rabon:

| | |
|---|---|
| Lafayette General Medical Center | $ 1,603.00 |
| Dr. Robert Franklin | $ 4,196.00 |
| Dr. Mark McDonnell/Louisiana Spine Surgery | $ 1,040.47 |
| Teche Drugs Pharmacy | $ 1,467.06 |
| TOTAL | $ 8,306.53 |

Therefore, we award Rabon $8,306.53 in past medical expenses.

At trial and in his post-trial memorandum, Rabon requested he be awarded future medical expenses for a discogram procedure "to determine the extent and nature of the continued pain in his back." "Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred." *Veazey v. State Farm Mut. Auto. Ins. Co.*, 587 So.2d 5, 8 (La.App. 3 Cir. 1991).

Dr. McDonnell, who performed the bilateral facet injections on Rabon, recommended a lumbar discogram be performed. His opinion set forth in his September 15, 2016 report was since Rabon's "pain has recurred after initial success with facet injections, it is very likely that the disc bulge seen on MRI at L4-5 represents a disc disruption. . . A lumbar discogram is required to evaluate

10

this." However, we note that Rabon failed to provide a specific amount for the cost of the discogram procedure, merely stating in his post-trial memorandum that the cost of the procedure "likely will exceed $20,000.00." In making an award for future medical we cannot rely on the speculative "guesstimations" of an attorney. Therefore, we will not render any award for future medical expenses.

We find the evidence establishes Rabon is entitled to an award for general damages for the injuries sustained in the accident, as the record establishes Rabon proved through medical testimony that it is more likely than not that the subsequent injuries were caused by the accident. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 and 94-2615 (La. 2/20/95), 650 So.2d 757. The medical evidence in this case established Rabon suffered an aggravation to pre-existing degenerative conditions in his back and neck which were made symptomatic by the trauma sustained in the instant accident. He suffered soft tissue injuries which aggravated his pre-existing condition, which necessitated over six months of conservative treatment, including consistent physical therapy from September, 2016 through March, 2016, as well as one steroid injection in his back. It is a well-settled principle that a tortfeasor takes his victim as he finds him and when a defendant's tortious conduct aggravates a preexisting condition, the defendant must compensate the victim for the full extent of the aggravation. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

Our review of the jurisprudence revealed the following cases which we find helpful in our assessment of damages. *See Lewis v. Jones*, 11-1117 (La.App. 3 Cir. 5/22/12), 96 So.3d 559, (the plaintiff received $40,000.00 in general damages for an aggravation to her hip and spine, that court considered no more than degenerative changes in her hip and spine. The injury was not considered permanent and no surgery was recommended); *Guidry v. Millers Cas. Ins. Co.*, 01-01 (La.App. 1 Cir. 6/21/02), 822 So.2d 675, (the plaintiff, who suffered injuries

11

from a car accident, was awarded $50,000.00 for an aggravation of a degenerative lumbar condition. No surgery was required, but there was testimony that the plaintiff would continue to suffer symptoms from her injuries); *Joseph v. Archdiocese of New Orleans*, 10-659 (La.App. 4 Cir. 11/10/10), 52 So.3d 203, (the plaintiff was awarded $30,000 for soft tissue injury superimposed on pre-existing degenerative changes in back. There was conflicting medical testimony as to duration of aggravation, including an orthopedist's testimony that the injury was limited to a few months of aggravation of degenerative musculoskeletal condition).

After reviewing the prior cases, we find an appropriate award of general damages for the aggravation of Rabon's pre-existing degenerative conditions is $50,000.00.

## DECREE

For the foregoing reasons, we reverse the trial court's judgment finding Oliver Rabon at fault in causing the August 26, 2015 accident. We render judgment finding defendant, James Smithkors, solely at fault in causing the accident. We further find Oliver Rabon suffered injuries as a result of the August 26, 2015 accident. After a de novo review of the record, we award Oliver Rabon $8,306.53 in medical expenses and $50,000.00 in general damages. All costs of this appeal are assessed against Defendants-Appellees.

**REVERSED AND RENDERED.**