RASHAD JOHNSON, RHONDA BROWN, LASHE BOUDREAUX AND KAIRON JONES

VERSUS

BYRON SCOTT AND THE SEWAGE AND WATER BOARD OF NEW ORLEANS

*     NO. 2020-CA-0552

*    

    COURT OF APPEAL

*    

    FOURTH CIRCUIT

*    

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-07238, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Dale N. Atkins)


Stephen Paul Bruno
BRUNO & BRUNO LLP
855 Baronne Street
New Orleans, LA 70113

    COUNSEL FOR PLAINTIFF/APPELLEE


Kriste Talton Utley
Ross A. Ledet
BOYKIN & UTLEY
400 Poydras Street
Suite 1540
New Orleans, LA 70130


    COUNSEL FOR DEFENDANT/APPELLANT

       **AMENDED AND AFFIRMED AS AMENDED**
          **APRIL 21, 2021**

*DNA*
*JFM*
*DLD*

This is a personal injury case. Appellants, the Sewerage and Water Board of New Orleans (the "S&WB") and Byron Scott (collectively, the "Appellants"), appeal the trial court's July 7, 2020 judgment, which found Mr. Scott one hundred percent at fault for the motor vehicle collision he had with Rashad Johnson ("Mr. Johnson"), Lashe Boudreaux ("Ms. Boudreaux"), and Kairon Jones ("Mr. Jones"), and which awarded Mr. Johnson, Ms. Boudreaux, Mr. Jones, and Rhonda Brown ("Ms. Brown"), the owner of the vehicle Mr. Johnson was driving, damages for medical expenses, pain and suffering, and property loss. For the following reasons, we amend the trial court's July 7, 2020 judgment and affirm the judgment as amended.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 4 p.m. on May 9, 2017, Mr. Johnson was driving a 2015 Ford Mustang owned by his mother, Ms. Brown, and his mother's husband, Jeffrey Houston. Mr. Johnson was in the left southbound lane on Downman Road in New Orleans approaching Chef Menteur Highway. At that point on Downman Road, there are two southbound lanes and two northbound lanes that are separated by a small median that is approximately one foot wide. Mr. Johnson had two passengers

1

in the vehicle: Mr. Jones sat in the front passenger seat and Ms. Boudreaux sat in the back passenger-side seat. Meanwhile, Mr. Scott, driving a take-home 2012 Ford F-150 owned by his employer, the S&WB, was on his way home after leaving the NOLA Animal Clinic near the intersection of Downman Road and Dreux Avenue. Mr. Scott was attempting to make a left turn onto Dreaux Avenue from Downman Road when Mr. Johnson struck Mr. Scott.

The accident caused the airbags in the Mustang to deploy. The Mustang was totaled. After getting out of the vehicle, Mr. Johnson called his mother Ms. Brown to come to the accident site. After the parties' interviews with the responding New Orleans Police Department ("NOPD") officer, Officer David Wogan, Ms. Brown drove Mr. Johnson, Ms. Boudreaux, and Mr. Jones to the emergency room at University Medical Center for treatment. After being examined and treated at University Medical Center, Mr. Johnson, Mr. Jones, and Ms. Boudreaux were released that evening. Mr. Johnson, Mr. Jones, and Ms. Boudreaux sought additional medical treatment and chiropractic care for several months after the accident for the injuries they sustained.

On July 26, 2017, Mr. Johnson, Ms. Brown, Ms. Boudreaux, and Mr. Jones (collectively, "Appellees") filed a Petition for Damages in Orleans Parish Civil District Court, alleging that Appellants were at fault in the accident. Appellees prayed that the trial court award Mr. Johnson, Mr. Jones, and Ms. Boudreaux damages for medical bills and pain and suffering and that it award Ms. Brown damages for the loss of the Mustang. On October 11, 2017, Appellants filed an Answer and Reconventional Demand, generally denying Appellees' allegations, and further alleging that Mr. Johnson was at fault in the accident. Appellants prayed that the trial court award them damages.

2

**EVIDENCE PRESENTED AT TRIAL**

The matter proceeded to a bench trial on October 28-29, 2019. During trial, Appellees presented the testimony of Mr. Johnson, Mr. Jones, and Ms. Brown, as well as the pre-trial deposition testimony of Ms. Boudreaux. Appellees also introduced into evidence photographs of Ms. Brown's Mustang as well as photos of the S&WB truck taken after the accident, and medical records for Mr. Johnson, Mr. Jones, and Ms. Boudreaux. Appellees also introduced a property damage estimate for the Mustang, showing the Mustang was valued at $21,078.70.

*Rashad Johnson's Trial Testimony*

Mr. Johnson testified that, on the afternoon of the accident, he was driving the Mustang and Mr. Jones was riding in the front passenger seat of the Mustang when they picked up Ms. Boudreaux at her home. Mr. Johnson explained that the three of them were headed to the mall. Mr. Johnson testified he was traveling in the left lane toward Chef Menteur Highway and that the traffic was not heavy. Mr. Johnson could not say how long exactly he had been traveling in the left lane, but testified he had been traveling in that lane for a while. He testified that, as he was driving in the left lane, "all of a sudden" the S&WB truck drove in front of him trying to make left turn. Mr. Johnson recounted that the driver of the truck came from the right lane and did not make any indication of his intention to make a turn, such as turning on his blinker, before making the turn. Mr. Johnson testified that he tried to brake and blow his horn, but collided with Mr. Scott anyway.

Mr. Johnson testified that he struck the left rear side of the truck. Mr. Johnson identified photos of the truck and the Mustang at trial, and testified that the airbags deployed and the Mustang was totaled. He testified multiple times that he struck the truck on the side and not the rear. Mr. Johnson also testified that the

3

truck driven by Mr. Scott was never directly in front of him in the same lane of travel. Mr. Johnson characterized the accident as "very, very serious" and stated that the accident caused him to slam into the airbag and that he was in shock after the accident.

Mr. Johnson explained that the Mustang's airbag struck him in the face and he was unable to get out of the car for three to four minutes after the collision. He recalled that he telephoned his mom, Ms. Brown, once he got out of the car, and she came to the accident site. He further recounted that he hurt his left knee, left wrist, and lower middle back in the accident. Mr. Johnson further testified that he spoke to NOPD Officer Wogan who responded to the scene and that he told Officer Wogan what happened before his mom took him, Mr. Jones, and Ms. Boudreaux to University Medical Center.

While at the hospital, x-rays were taken of Mr. Johnson's neck, knee, wrist, and chest. Mr. Johnson stated that the accident was "life-changing," and he was unable to sleep the night of the accident after he got home from the hospital. Mr. Johnson sought chiropractic therapy after the accident, and explained that he was unable to play sports or get up to attend class sometimes due to his injuries from the accident. He continued going to physical therapy in Lafayette, Louisiana for five months when he moved away to go to college. He testified that he still has back spasms and said that he plans to continue with therapy for the ongoing pain he has.

Mr. Johnson's medical records were introduced at trial, and they showed that, two days after the accident, on May 11, 2017, Mr. Johnson began physical therapy at New Orleans East Medical Rehab. Mr. Johnson was diagnosed with having muscle spasms in his back, a laceration of his right forearm, a contusion

4

and sprain of his right wrist, and post-traumatic headache, and dizziness. He was also had sprains of his cervical, thoracic, and lumbar spine, as well as sprains of his lower leg, cervicalgia, and myalgia. His medical records further showed that Mr. Johnson was treated at New Orleans East Medical Rehab until August 2017, when he left to attend college in Lafayette. Mr. Johnson also introduced his medical records from LaBorde Physical Therapy in Lafayette, where he was treated from August 2017 until November 17, 2017 and again from January 10, 2018 to February 21, 2018. Mr. Johnson's medical bills totaled $6,150.66.

*Kairon Jones' Trial Testimony*

Mr. Jones testified that he was riding in the Mustang with Mr. Johnson on the day of the accident and that the two of them picked up Ms. Boudreaux from her house and headed to the mall. He recalled that they were driving on Downman Road headed toward Chef Menteur in the left lane and he was seated in the front passenger seat. Mr. Jones explained that the truck driven by Mr. Scott was not ahead of them in traffic and that, when Mr. Johnson collided with Mr. Scott's truck, Mr. Johnson struck the rear side of the truck. Mr. Jones testified that Mr. Scott turned in front of them from the right lane while making a left turn. Mr. Jones also identified photos from the accident and recalled the airbags in the Mustang deploying and one of them hitting him in the face. He testified that he felt dizzy after the accident and that he hit his shoulder on the side window of the Mustang.

Mr. Jones testified that he had pain in his neck, back, and shoulders and that his head struck the side window. He was prescribed medication at University Hospital after the accident. He explained that he also had facial pain. He testified that he sought chiropractic care after the accident. Mr. Jones testified that, due to

5

his injuries, he was not able to finish his high school baseball season and that he had to leave his job at UPS because he could not perform the physical aspects of the job. He also stated that he could not get another job after that. He testified that he still experiences neck pain from the accident and that the pain never really went away.

Mr. Jones' medical records were entered into evidence at trial. His records showed that, like Mr. Johnson, Mr. Jones sought treatment at University Medical Center after the accident. Mr. Jones' medical records also showed that he sought treatment from Medical Rehab Accident Injury Center on May 11, 2017, two days after the accident. Mr. Jones was diagnosed with muscle spasms in his back, post-traumatic headache, dizziness, jaw pain, and sprains of his cervical, thoracic, and lumbar spine. He received treatment at the Medical Rehab Accident Injury Center until August 11, 2017 when he returned to college at Southeastern University in Hammond, Louisiana.

Thereafter, beginning on November 6, 2017, Mr. Jones began treatment at Advanced Medical Rehab in Mandeville, Louisiana, where he complained of neck and lower back pain. His medical bills totaled $3,454.45.

*Lashe Boudreaux's Trial Testimony*

Ms. Boudreaux did not testify live at the trial due to being unavailable, but her pre-trial deposition testimony was entered into evidence. Ms. Boudreaux testified that she was riding in the Mustang in the back seat and was applying lipstick using her cell phone as a mirror when she felt Mr. Johnson abruptly apply his brakes. Ms. Boudreaux explained that she then looked up and saw Mr. Scott on the right side of the vehicle. She also testified that it appeared as if Mr. Scott was attempting to cut them off while making a U-turn.

Regarding her injuries, Ms. Boudreaux testified that the pain she had in her jaw, legs, and shoulders from the accident diminished over time, but her back pain did not. As a result, Ms. Boudreaux testified that she could no longer dance, lift anything over 20 pounds, or stock merchandise for her employer. At the time of her deposition, she continued to have back pain.

Ms. Boudreaux's medical records were also introduced at trial. Ms. Boudreaux was treated at University Medical Center on the evening of the accident, where she complained of jaw pain, as well as pain in both shoulders, her back, and leg. On May 11, 2017, two days after the accident, Ms. Boudreaux began treatment at Medical Rehab Accident Injury Center. There, she was diagnosed with post-traumatic headache, anxiety disorder, jaw pain, and sprains, strains, and spasms of her cervical and thoracic spine. She also had sprains and strains in both shoulders and pain in both legs. Ms. Boudreaux continued regular treatment at Medical Rehab Accident Injury Center until August 2017. Her medical bills totaled $4,790.52.

*Rhonda Brown's Trial Testimony*

Ms. Brown testified at trial that she is Mr. Johnson's mother and that she owns the Mustang with her husband, Mr. Houston. She stated that the vehicle was bought during her marriage to Mr. Houston, though her name does not appear on the title. She also testified that, after the accident, the Mustang was totaled, and was valued at $21,078.70. She produced a property damage estimate for the Mustang showing its value at that amount, which was entered into evidence.

*Byron Scott's Trial Testimony*

Mr. Scott testified both during Appellees' case-in-chief and during his own case-in-chief. He testified that, although he could not recall the day of the week,

7

the accident occurred at approximately 4 p.m. Mr. Scott testified he was on his way home from work that day and he stopped at the NOLA Animal Clinic on Downman Road to pick up some medication for his dog. Mr. Scott explained that he was driving his take-home S&WB truck at the time of the accident and that the truck was insured by the S&WB.

Mr. Scott estimated there was a distance of approximately four car lengths between the driveway of the animal clinic and the accident site. He testified that he first looked to make sure traffic was clear before he exited the animal clinic driveway, and that he pulled into the left lane of Downman Road. Mr. Scott maintained that he was fully in the left lane of Downman Road and had his turn signal on as he prepared to make a left turn onto Dreux Avenue. Mr. Scott contended that he was never in the right lane. He testified that the traffic was clear as he was turning, but he was applying his brakes when the Mustang "rear-ended" him. He said he was struck on the corner of the truck. Mr. Scott admitted that, when the truck was repaired, the left rear tire and wheel well were damaged and had to be replaced.

Mr. Scott maintained that the Mustang hit him on the rear bumper corner, rather than the direct rear because he was in the process of making a left turn when the collision occurred. He disputed that he was struck in the rear left side quarter panel and stated the pictures only showed the panel was damaged because the bumper pushed the panel forward. He testified that he was traveling at most five miles per hour at the time of the accident.

Following Appellees' case-in-chief, Appellants moved for involuntary dismissal of Ms. Brown's property damage claim because Mr. Houston was listed on the title as the only owner of the Mustang. The trial court denied the motion,

8

noting that Ms. Brown testified at trial that she and Mr. Houston bought the Mustang during their marriage and during the community property regime, thus it was community property. The trial court found either spouse can bring a claim on behalf of the community.

**THE TRIAL COURT'S JUDGMENTS**

The trial court rendered its original judgment on January 28, 2020, finding Mr. Scott one hundred percent at fault for the accident, and awarding Mr. Johnson, Mr. Jones, and Ms. Boudreaux damages for medical expenses and pain and suffering. The trial court *sua sponte* issued an amended judgment on January 29, 2020. The amended judgment provided that it was corrected to accurately reflect the counsel who represented the parties at trial and to address Ms. Brown's property claim, which the January 28, 2020 judgment did not address.

On February 7, 2020, Appellants filed a motion for new trial, arguing the trial court's January 29, 2020 amended judgment was a nullity because it altered the substance of the January 28, 2020 judgment without a hearing or notice to all parties, in violation of La. C.C.P. art. 1951.[1] The trial court issued a second amended judgment on February 10, 2020, which is virtually identical to the January 29, 2020 amended judgment, save that Ms. Brown's property damage award was removed.

---

[1] La. C.C.P. art. 1951 provides:

> On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment, but not its substance, or to correct errors of calculation. The judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if the court or the party submitting the amended judgment certifies that it was provided to all parties at least five days before the amendment and that no opposition has been received.

On February 14, 2020, Appellees also filed a motion for new trial, arguing that the February 10, 2020 judgment was not a final judgment because it did not address all of the parties' claims. After a hearing on Appellees' motion for new trial, the trial court granted Appellees' motion and rendered another judgment on July 7, 2020. The July 7, 2020 judgment again found Mr. Scott one hundred percent at fault for the accident and awarded: (1) $6,150.66 to Rashad Johnson for medical expenses and $22,500 for pain and suffering; (2) $21,078.70 to Rhonda Brown for property damages; (3) $4,709.52 to Lashe Boudreaux for medical expenses and $10,000 for pain and suffering; and (4) $3,454.45[2] to Kairon Jones for medical expenses and $15,000 for pain and suffering.

From this judgment, Mr. Scott and the S&WB timely appeal.

## DISCUSSION

### *ASSIGNMENTS OF ERROR*

Mr. Scott and the S&WB raise three assignments of error on appeal:

(1) The trial court erred in finding Mr. Scott at fault for the collision;

(2) In the alternative, the trial court erred in not allocating fault to Mr. Johnson; and

(3) The trial court erred in awarding property damages to Ms. Brown for the totaled Mustang.

Because Appellants' first and second assignments of error are related, we will discuss them together.

---

[2] There is a discrepancy in the award to Mr. Jones for medical expenses in that the trial court's written award does not match the numerical award. The written award to Mr. Jones provided that he was awarded "three thousand, four hundred, fifty-four dollars and forty-five cents" but provided in parentheses that the numerical award is $2,626.45. For reasons discussed more fully herein, this Court amends the judgment to provide that Mr. Jones is awarded the amount that is written—$3,454.45—and affirms the judgment as amended.

## DISCREPANCY IN THE JUDGMENT

Before we address the assignments of error, the Court first addresses a discrepancy in the judgment, though neither Appellants nor Appellees noted this discrepancy on appeal. In its award of damages to Mr. Jones, the trial court stated that Mr. Jones "is awarded the sum of three thousand, four hundred, fifty-four dollars and forty-five cents ($2,626.45) for his medical expenses…" The trial court's written reasons for judgment also awarded Mr. Jones $3,454.45 in accordance with the written number of the damage award. Thus, there is a discrepancy between the written award of damages and the numerical award of damages.

When faced with a similar situation, the First Circuit consulted the record to determine the correct amount and rendered judgment on that amount. *See Jumonville v. Cardenas*, 2013-0037 (La. App. 1 Cir. 12/10/13), 2013 WL 6506205 at *8 ("[t]he written amount shows 'Eighty-Eight Thousand, Three Hundred, Thirty-Three and 33/100ths' Dollars, whereas the numerical amount … is $83,333.33. The agreement … was that [one] would receive a contingency fee of one-third of the settlement amount [which was] $250,000…. Therefore, the correct figure, as shown in the judgment, is $83,333.33."). The First Circuit raised this issue on its own in *Jumonville*, as this Court does.

In its written reasons for judgment, the trial court discussed Mr. Jones' medical records, noting Mr. Jones sustained injuries to his neck, back, head, face, and shoulder, for which he sought medical treatment. The trial specifically discussed Mr. Jones' medical treatment immediately following the accident until August 2017, as well treatment he sought in November 2017. The trial court noted that Mr. Jones also sought medical treatment for neck pain and stiffness at New

Orleans East Hospital in July 2018, but the trial court found that treatment was too attenuated to be related to this accident. Thus, the trial court concluded that Mr. Jones' award for medical expenses should be $3,454.45. The record, then, supports the conclusion that the correct award amount is $3,454.45, in accordance with the written award in the judgment. This Court amends the judgment to correct the numerical amount awarded, pursuant to La. C.C.P. art. 1951, which allows a final judgment to be amended without a hearing "to correct errors of calculation." This amendment is a clerical error in the judgment and is not substantive, as the judgment clearly provides that the written amount is $3,454.45.

We now turn to Appellants' assignments of error.

### ASSIGNMENTS OF ERROR NOS. 1 AND 2: Liability and Allocation of Fault

In their first two assignments of error, Appellants argue the trial court erred in finding Mr. Scott at fault for the accident and in not allocating any percentage of fault to Mr. Johnson.

After a bench trial, the trial court found Mr. Scott one hundred percent liable for the motor vehicle accident with Mr. Johnson. Thus, the trial court allocated no fault to Mr. Johnson. We review a trial court's factual findings on liability under the manifest error standard of review. *Watson v. Hicks*, 2015-0046, p. 6 (La. App. 4 Cir. 5/27/15), 172 So.3d 655, 663 (citing *Zito v. Advanced Emergency Med. Servs., Inc.*, 2011-2382, pp. 4-5 (La. 5/8/12), 89 So.3d 372, 375).

In *Zito*, the Louisiana Supreme Court explained:

> [A] reviewing court may not disturb the factual findings of the trier of fact in the absence of manifest error. *Ardoin v. Firestone Polymers, L.L.C.*, [20]10-0245[,] p. 6 (La. 1/19/11), 56 So.3d 215, 219. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State, Department of Transportation and Development*, 617 So.2d 880, 882 (La. 1993). If the factual findings

12

are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 882-883. However, where documents or objective evidence so contradict the witness' story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness' story, the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. *Id.* at 882; *Rosell v. ESCO*, 549 So.2d 840 (La. 1989).

2011-2382, pp. 4-5, 89 So.3d at 375.

The same manifest error standard of review is also applied to the trial court's findings regarding the allocation of fault. *Watson*, 2015-0046, p. 7, 172 So.3d at 663-64 (citing *Beggs v. Harrah's New Orleans Casino*, 2014-0725, pp. 13-14 (La. App. 4 Cir. 1/21/15), 158 So.3d 917, 925). Appellate courts are required to give great deference to the trial court's allocation of fault and "'[o]nly after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award.'" *Id.*, 2015-0046, p. 7, 172 So.3d at 664 (quoting *Fontenot v. Patterson Ins.*, 2009-0669, p. 22 (La. 10/20/09), 23 So.3d 259, 274) (internal citation omitted).

"[T]he [reviewing] court may not reverse, even if convinced that it would have weighed the evidence differently." *McDonald v. City of Bastrop*, 2019-01949, p. 1 (La. 2/26/20), 289 So.3d 1029, 1029 (citing *Stobart*, 617 So.2d at 882-82). *See also Progressive Sec. Ins. Co. v. Coca-Cola Bottling Co. United-Gulf Coast*, *LLC*, 2020-0289, p. 8 (La. App. 4 Cir. 10/14/20), 306 So.3d 500, 506.

Here, the record shows that the collision occurred as Mr. Scott was attempting to make a left turn from Downman Road onto Dreux Avenue. Appellants claim Mr. Scott was fully in the left lane when he attempted to make a legal left turn and the collision was caused by Mr. Johnson's failure to pay

attention and take actions to avoid the collision. Appellees counter that Mr. Scott attempted to make an illegal left turn onto Dreux Avenue from the right lane of Downman Road.

The parties dispute which of the Louisiana Revised Statutes controls here. Appellants contend that one of two of the Louisiana Revised Statutes is applicable. Appellants first argue that La. R.S. 32:81(A) is applicable here. La. R.S. 32:81(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." Appellants argue that La. R.S. 32:81 establishes a presumption of negligence on the part of a motorist who rear-ends another in a collision. Appellants maintain Mr. Johnson rear-ended Mr. Scott and, thus, should be presumed negligent.

Alternatively, Appellants contend that, should this Court determine that La. R.S. 32:124—which provides that "[t]he driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall . . . yield the right of way to all approaching vehicles so close as to constitute an immediate hazard"—should apply, Mr. Scott met the heightened duty of care that La. R.S. 32:124 imposes.

Countering, Appellees argue that La. R.S. 32:79 applies. La. R.S. 32:79 provides, in pertinent part:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Appellees argue that La. R.S. 32:79 imposes a heightened duty of care on a motorist who attempts to change lanes prior to an accident. They maintain that the evidence showed Mr. Scott did not meet the heightened duty of care imposed by La. R.S. 32:79 when he changed lanes prior to the accident, and the trial court properly found him one hundred percent at fault.

The trial court found that Mr. Scott made his left turn in front of Mr. Johnson, essentially cutting Mr. Johnson off and causing the accident. Because the propriety of Mr. Scott's left turn is at the crux of the fault determination in this matter, this Court finds that neither of the parties' positions on the law controls. Instead, we find that the requirements for motorists making left turns is applicable here.

Regarding motorists making left turns on roadways that are not two-way roadways, La. R.S. 32:101(A)(3) provides:

> At any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle and after entering the intersection the left turn shall be made so as to leave the intersection in the safest lane lawfully available to traffic moving in such direction upon the roadway being entered.

La. R.S. 32:104(A) goes on to provide that "[n]o person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101 . . . ." Further, La. R.S. 32:104(B) mandates that "[w]henever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention . . . ." La. R.S. 32:105 provides that the signal must be given by use of signal lamps which must be in both the front and rear of the vehicle.

Discussing La. R.S. 32:101, this Court has explained that "[a] left turn is generally a dangerous maneuver that must not be undertaken until the turning motorist ascertains that the turn can be made in safety." *Ditcharo v. Allstate Ins. Co.*, 1999-1873, p. 4 (La. App. 4 Cir. 11/8/00), 772 So.2d 928, 930 (citing *Thomas v. Champion Ins. Co.*, 603 So.2d 765, 767 (La. App. 3 Cir. 1992)). Thus, "[a] left-turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show that he or she is free of negligence." *Id.* (citing *Thomas*, 603 So.2d at 767).

Here, Mr. Scott testified at trial that he had pulled into the left lane fully when he attempted to make his left turn, and that Mr. Johnson rear-ended him squarely in the back bumper. Mr. Scott testified that he was never in the right lane and pulled directly into the left lane from the driveway of the NOLA Animal Clinic. Conversely, Mr. Johnson testified at trial that Mr. Scott made his left turn from the right lane, cutting off Mr. Johnson as he traveled in the left lane. Both Mr. Jones and Ms. Boudreaux corroborated this testimony. Mr. Jones testified that Mr. Scott pulled in front of them from the right lane while making his left turn. Ms. Boudreaux testified that she observed Mr. Scott traveling next to Mr. Johnson's vehicle in the right lane as they traveled in the left lane.

The photographs of Mr. Scott's damaged truck that were admitted at trial support Mr. Johnson's version of events and contradict Mr. Scott's. The photographs show that the truck was damaged on the rear driver's side quarter panel where Mr. Johnson said he struck Mr. Scott, rather than squarely on the rear bumper as Mr. Scott claimed. Mr. Scott also admitted on cross-examination that the rear driver's side tire and wheel well had to be repaired or replaced, which supports the testimony that Mr. Johnson struck Mr. Scott on the driver's side,

16

rather than squarely in the back. The location of the damage is significant because it shows that Mr. Scott was perpendicular to Mr. Johnson while making the turn, rather than immediately in front of Mr. Johnson in the right lane. That Mr. Scott was perpendicular to Mr. Johnson supports the testimony that he made the left turn from the right lane.

The trial court found that Mr. Scott crossed the right and left lanes on Downman Road and turned directly into Mr. Johnson's path when Mr. Scott turned left. Thus, the trial court concluded, Mr. Scott caused the collision. Based on this finding of fact, Mr. Scott made an improper left turn as he did not make the left turn from the most extreme left lane that was available to traffic, as required by La. R.S. 32:101.

Importantly, "[w]here there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review, even though the reviewing court may feel its own evaluations and inferences are as reasonable." *Dennison v. Inc. WHC*, 2004-0304, p. 10 (La. App. 5 Cir. 9/28/04), 885 So.2d 16, 21 (citing *Rosell*, 549 So.2d at 846).

The appellate court does not determine if the factfinder was right or wrong, but rather, whether if the factfinder's conclusion was a reasonable one. *Stobart*, 617 So.2d at 882. When two permissible views of the evidence exist, the factfinder's choice between them cannot be said to be manifestly erroneous or clearly wrong. *Id*. at 883.

Under the circumstances presented here, this Court determines that the trial court's determinations on liability and in not allocating fault to Mr. Johnson were not manifestly erroneous. Appellants' first two assignments of error lack merit.

***ASSIGNMENT OF ERROR NO. 3: Award to Rhonda Brown for Property
Damage***

In their third assignment of error, Appellants complain that the trial court
erred in awarding property damages to Mr. Johnson's mother, Ms. Brown, for the
loss of the Ford Mustang that Mr. Johnson was driving because the Mustang was
not owned by Ms. Brown. Appellants argue that, because Ms. Brown's husband
Mr. Houston was listed on the Mustang's title as the sole owner, Ms. Brown did
not prove ownership of the vehicle or her entitlement to damages.

Appellees counter that the trial court properly awarded Ms. Brown property
damages because the Mustang was the community property of Ms. Brown and Mr.
Houston and, thus, was owned by both of them. We agree.

During trial after the close of the Appellees' case-in-chief, the S&WB
moved for involuntary dismissal of Ms. Brown's property damage claim for the
Mustang because Mr. Houston was listed as the owner on the title. The trial court
denied the motion on the basis that Ms. Brown testified the Mustang was bought
during the parties' marriage—*i.e.* during the community property regime—thus, it
was community property. The trial court found that either spouse can bring a claim
on behalf of the community.

The trial court's classification of property is a factual determination subject
to the manifest error standard of review. *Pelafigue v. Sudduth*, 2001-0807, p. 12
(La. App. 3 Cir. 5/15/02), 820 So.2d 583, 592 (citing *Lytal v. Lytal*, 2000-1934, p.
3 (La. App. 1 Cir. 11/14/01), 818 So.2d 111, 113)).

"Property of married persons is either community or separate . . . ." La. C.C.
art. 2335. "Each spouse owns a present undivided one-half interest in the
community property." La. C.C. art. 2336. Community property is made up of

"property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse." La. C.C. art. 2338. Importantly, "[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community . . . ." La. C.C. art. 2340. Accordingly, La. C.C.P. art 686 provides that "[e]ither spouse is the proper plaintiff, during the existence of the marital community, to sue to enforce a community right . . . ."

Community rights which both spouses have the right to sue to enforce include the right to sue for damages to community property. *See e.g., Rollins v. Allstate Ins. Co.*, 2002-0330, p. 3 (La. App. 3 Cir. 10/2/02), 828 So.2d 677, 679 (where the Court upheld an award of property damages to one spouse after finding the damaged property was community property even though the property was titled in the other spouse's name).

Here, Ms. Brown testified that the Mustang was purchased during her marriage to Mr. Houston, though only his name appears on the title. Thus, pursuant to La. C.C. art. 2338, the Mustang is presumed to be community property as it is property acquired by either spouse during the existence of the legal regime. Additionally, the Mustang is in the possession of both Ms. Brown and Mr. Houston; thus, it is presumed to be community property. La. C.C. art. 2340. As community property, Ms. Brown owns an undivided one-half interest in the Mustang, despite the fact that only Mr. Houston's name appears on the title. La. C.C. art. 2336.

Appellants presented no evidence to contradict Ms. Brown's testimony that the Mustang was purchased during Ms. Brown's marriage to Mr. Houston. Accordingly, Appellants failed to rebut the presumption of community and failed to establish that the Mustang is the separate property of Mr. Houston. Accordingly,

this Court finds that the trial court did not commit manifest error in determining that the Mustang was community property. Because the Mustang is community property, Ms. Brown is as much owner of the Mustang as Mr. Houston, even if her name does not appear on the Mustang's title. She is entitled to bring the claim for community property loss on behalf of the community, pursuant to La. C.C.P. art. 686. Accordingly, the trial court properly determined that Ms. Brown was entitled to damages as owner, and we affirm the award.

## DECREE

For the foregoing reasons, the trial court's July 7, 2020 judgment is amended to reflect that Mr. Jones' award for medical expenses is $3,454.45. As amended, the judgment is affirmed.

**AMENDED AND AFFIRMED AS AMENDED**